J-S12032-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN FREEMAN, | : | |
| | : | |
| Appellant | : | No. 716 MDA 2018 |

Appeal from the Judgment of Sentence January 22, 2018
in the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005854-2011

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 16, 2019**

Brian Freeman ("Freeman") appeals from the judgment of sentence imposed after a jury convicted him of firearms not to be carried without a license, possession of a firearm by a minor, and persons not to possess firearms (collectively, the "firearms offenses"),[1] as well as possession of a controlled substance and possession of a small amount of marijuana.[2] We affirm.

This Court previously summarized the relevant factual history underlying this appeal as follows:

> On June 19, 2011, Officer Larry Lawrence [("Officer Lawrence")] and Officer Timothy Clymer [("Officer Clymer")] of the York Police Department stopped a vehicle, [driven by Michael Wilson ("Wilson"),] in which [Freeman] was a passenger, for failure to use a turn signal. When the officers approached [the vehicle],

---

[1] **See** 18 Pa.C.S.A. §§ 6106(a)(1), 6110.1(a), 6105.

[2] **See** 35 P.S. § 780-113(a)(16), (a)(31)(i).

they noticed a strong odor of marijuana emanating from the vehicle and observed a clear plastic baggie of marijuana in plain view. During the ensuing search of the vehicle, a loaded [.40 caliber handgun] was recovered on the floorboard of the front passenger seat[,] where [Freeman] had been sitting. [Officer Lawrence] testified that the gun was discovered resting upside down[,] with the barrel pointing toward the driver's side[,] and the handle [of the gun was] pointing up.[3] No fingerprints or DNA were recovered from the firearm.[4]

It was stipulated that … Wilson[] pled guilty to possessing the firearm found in the vehicle. Portions of the transcript from Wilson's guilty plea were read to the jury[,] wherein Wilson testified that he was driving the car, [and] the car was rented by a friend of his …. Wilson knew that the pistol was in the car on the floor of the passenger side of the vehicle. Wilson testified that neither he nor [Freeman] had a permit to carry the pistol.

***Commonwealth v. Freeman*** ("***Freeman I***"), 647 MDA 2013 (Pa. Super.

filed Nov. 20, 2013) (unpublished memorandum at 1-2) (citations to record

omitted, footnotes added).

---

[3] Relevantly, Officer Lawrence testified that it would not have been possible for Wilson, the driver, to place the firearm in the location in which it was discovered, reasoning as follows: "[Wilson] would have had to bend all the way across the front compartment of the motor vehicle[,] primarily putting his head in [] Freeman's lap[,] to set the gun down perfectly on the top rail without it falling over. That is just not possible." N.T., 11/13/17, at 131; ***see also id.*** at 124-25 (wherein Officer Lawrence explained, concerning the gun resting on its "top rail," that the gun "was actually sitting upside down … and standing straight up, which is very hard to do because with all these bullets in this magazine, … it will fall over really easy [*sic*] with any bumping[.]"). Officer Lawrence testified that it "absolutely" was possible for Freeman to have placed the firearm in that position, since "[a]ll he had to do was reach down between his legs …, set it on the floor, and put it between his feet[.]" ***Id.*** at 132.

[4] Additionally, the police did not conduct a test concerning the firearm's operability.

Following his arrest, the Commonwealth charged Freeman with the above-described offenses.[5] The matter proceeded to a jury trial, wherein the instant case was consolidated, and jointly tried, with a separate case against Freeman. Regarding the instant case, the jury found Freeman guilty of the above offenses on September 13, 2012. Freeman timely filed an appeal, challenging, *inter alia*, the weight and sufficiency of the evidence supporting his convictions of the firearms offenses. This Court affirmed the judgment of sentence in **Freeman I**, 647 MDA 2013 (unpublished memorandum).

In January 2015, Freeman filed a Post Conviction Relief Act ("PCRA")[6] Petition, complaining that his trial counsel should have moved for the severance of Freeman's two separate criminal cases. The PCRA court granted the Petition, after which the instant matter proceeded to another jury trial in November 2017. The jury again found Freeman guilty of the above-described offenses.[7]

On January 22, 2018, the trial court imposed an aggregate sentence of six to twelve years in prison (granting Freeman credit for five years he had already served in prison). Freeman filed a Post-trial Motion for reconsideration of sentence, which the trial court denied. Freeman then filed a timely Notice

---

[5] Freeman, who was 17 years old at the time of the incident, was initially charged as a juvenile, but the case was ultimately transferred to adult court.

[6] **See** 42 Pa.C.S.A. §§ 9541-9546.

[7] The trial court found Freeman guilty of possession of a small amount of marijuana.

- 3 -

of Appeal. In response, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Freeman timely complied. The trial court then issued a Pa.R.A.P. 1925(a) Opinion.

On appeal, Freeman presents the following questions for our review:

A. Whether the trial court erred when it found the evidence presented by the Commonwealth at trial was sufficient to sustain [the] verdicts of guilty of carrying a firearm without a license[,] [] possession of a firearm by a minor and person not to possess a firearm[?]

B. Whether the trial court erred when it found that the evidence presented by the Commonwealth was sufficient to prove [the] operability of the firearm, an element of the offenses of 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. 6110.1(a), and 18 Pa.C.S.A. § 6105[]?

C. Whether the trial court erred when it found that the weight of the evidence was not so lacking that the jury's verdict did not shock one's sense of justice[,] so that a new trial was necessary?

Brief for Appellant at 5 (some capitalization omitted).

In his first issue, Freeman challenges the sufficiency of the evidence supporting his convictions of the firearms offenses,[8] asserting that they cannot stand because the Commonwealth failed to prove, beyond a reasonable doubt, that he possessed the firearm in question. *See id.* at 10-11. Specifically, Freeman emphasizes the fact that Wilson pled guilty to possessing the firearm. *Id.* Additionally, Freeman urges that "[h]is mere presence in the vicinity of the firearm does not establish possession[.]" *Id.* at 11.

---

[8] Possession of a firearm is an element in each of the firearms offenses. *See* 18 Pa.C.S.A. §§ 6106(a)(1), 6110.1(a), 6105.

- 4 -

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Melvin*, 103 A.3d 1, 39-40 (Pa. Super. 2014) (citation omitted).

Where, as here, a defendant did not have actual possession of the illegal item, the Commonwealth is required to establish that he or she constructively possessed it.[9] *See Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (noting that in firearm possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession).

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts

---

[9] In the instant appeal, the trial court instructed the jury on constructive possession, as did counsel for the parties during their respective closing arguments.

that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation and quotation marks omitted); *see also Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (stating that "circumstantial evidence may be used to establish constructive possession of the [contraband]."). The fact that the contraband is located in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its presence. *Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). Additionally, it is possible for two people to have joint constructive possession of an item of contraband. *Commonwealth v. Sanes*, 955 A.2d 369, 373 (Pa. Super. 2008). However, a defendant's mere presence at the scene does not establish constructive possession of a weapon. *Commonwealth v. Vargas*, 108 A.3d 858, 869 (Pa. Super. 2014) (*en banc*); *see also Parrish*, 191 A.3d at 37 (stating that the location and proximity of an actor to the contraband alone is not conclusive of guilt).

Here, the panel in *Freeman I* rejected Freeman's identical sufficiency challenge concerning possession of the handgun, holding as follows:

[Freeman's] access to and control over the passenger-seat area of the vehicle where the firearm was found was greater than that of the driver[, Wilson]. Thus, [Wilson's] admission to knowing [that] the weapon was in the vehicle[,] and pleading guilty to possession of the firearm[,] does not negate [Freeman's] constructive possession. The firearm was discovered on the floor

- 6 -

directly underneath the passenger seat[,] where [Freeman] had been sitting[,] and was easily within the area of [Freeman's] immediate control. The firearm was readily apparent to [] [O]fficer [Lawrence] when he looked into the vehicle, and should have been similarly visible to [Freeman] while he was seated in the vehicle.[FN] Thus, the evidence is sufficient to prove that [Freeman] was in possession of this weapon.

[FN] [Officer Lawrence] testified that the gun was discovered resting upside down with the barrel pointing toward the driver's side and the handle [was] pointing up. Certainly[,] the inference could be drawn that [Freeman] had been holding the gun for it to be in such a position.

*Freeman I*, 647 MDA 2013 (unpublished memorandum at 8) (footnote in original).

In the instant appeal, we likewise determine that the evidence, and all reasonable inferences to be drawn therefrom (in particular, the position in which the gun was resting[10]), was sufficient for the jury to find, beyond a reasonable doubt, that Freeman was in constructive possession (or, at a minimum, joint constructive possession) of the firearm. *See*, *e.g.*, *Commonwealth v. Stembridge*, 579 A.2d 901, 905 (Pa. Super. 1990) (holding that the defendant, who had been sitting in the passenger seat of a vehicle driven by a woman prior to the traffic stop, was in constructive possession of a bag of methamphetamine that the police found on the pavement *under the passenger side* of the vehicle, and stating that

_____

[10] In this regard, we emphasize the testimony of Officer Lawrence that it was "not possible" for Wilson to have placed the firearm in the precarious "upside down" (*i.e.*, handle pointing upwards) position on the passenger's side floorboard. N.T., 11/13/17, at 131.

"[defendant's] access to and control over the area in which the contraband was found was greater than that of the driver and the other passenger[.]"); *see also Commonwealth v. Macolino*, 469 A.2d 132, 136 (Pa. 1983) (holding that the evidence, viewed in its totality, demonstrated that husband maintained conscious dominion over cocaine found in a bedroom closet that he shared with his wife, and that the fact that his wife could also have maintained conscious dominion over the cocaine did not preclude conviction of husband, because possession of an illegal substance need not be exclusive). Therefore, Freeman is not entitled to relief on this claim.

In his second issue, Freeman contends that the evidence was insufficient to support his convictions of the firearms offenses, insofar as the Commonwealth failed to prove the element that the firearm was operable. *See* Brief for Appellant at 12-15. Though Officer Lawrence testified to his opinion that the firearm was operable, this is insufficient, Freeman asserts, without ballistics testing. *Id.* at 15. We disagree.

In its Opinion, the trial court addressed and rejected Freeman's claim as follows:

> "The Commonwealth … need not show the weapon to have been operable until evidence of its inoperability has been introduced into evidence." *Com*[*monwealth*] *v. Horshaw*, … 346 A.2d 340[, 342] ([Pa. Super.] 1975) (citation omitted). In this case, there was no evidence whatsoever as to the inoperability of the firearm. Therefore, the Commonwealth was not required to show that the firearm was operable.
>
> Nonetheless, there was evidence presented that the firearm was operable. "A reasonable fact finder may, of course, infer operability from an object which looks like, feels like, sounds like

- 8 -

or is like, a firearm." **Com**[**monwealth**] **v. Yaple**, … 357 A.2d 617, 618 ([Pa. Super.] 1976). "Such an inference would be reasonable without direct proof of operability." **Id.** In this case, there was no direct proof of the firearm's operability, as Officer Lawrence testified that he did not test fire the firearm in question. (N.T., 11/13/17, page 137).

However, Officer [] Lawrence did testify that the firearm is operable based upon his examination of the gun, looking at it, holding it, and touching it. (N.T., 11/13/17, page 129). Moreover, he also testified as follows:

- By the looks of the firearm, it can fire a bullet (N.T., 11/13/17, page 138); and

- That the firearm has a firing pin, and is a newer model firearm (N.T., 11/13/17, page 139); and

- That the firearm is a Smith & Wesson, .40 caliber [handgun] (N.T., 11/13/17, page 123; Commonwealth Exhibit # 22.1); and

- Smith and Wesson makes very reliable firearms, although he does not know if they ever produced an inoperable firearm (N.T., 11/13/17, page 139); and

- That there was a magazine discovered in the firearm that contained ten (10) rounds of ammunition and one (1) bullet in the chamber (N.T., 11/13/17, pages 123, 124; Commonwealth Exhibit # 22).

However, Officer Lawrence also testified that:

- He did not believe that you can tell if a firearm is inoperable by looking at it (N.T., 11/13/17, page 139); and

- If the spring [in the gun] is broken, the firearm could be inoperable (N.T., 11/13/17, page 140); and

- He could not see the spring in the firearm (N.T., 11/13/17, page 140); and

- He has no clue whether the spring is broken in the firearm in question (N.T., 11/13/17, page 140).

After further questioning, Officer Lawrence testified that:

- Just by looking at the firearm in question, the firearm is operable[,] because if there was a spring that was broken inside the gun, it would rattle (N.T., 11/13/17, page 141);

- Over [the Officer's] years of using guns, if anything [] is ever broken in a gun, it will rattle. This [gun] does not rattle (N.T., 11/13/17, page 142);

- He is absolutely satisfied that this is an operable gun (N.T., 11/13/17, page 142).

"[Q]uestions concerning inconsistent testimony go to the credibility of the witness, and hence, implicate the weight, rather than sufficiency of the evidence." *Commonwealth v. Montalvo*, … 956 A.2d 926, 932 [n.]6 [(Pa.] 2008) (citation omitted). "In instances where there is conflicting testimony, it is for the jury to determine the weight to be given the testimony. The credibility of a witness is a question for the factfinder." *Commonwealth v. Puksar*, … 740 A.2d 219, 224 ([Pa.] 1999) (citation omitted). Furthermore, "it is well settled that we cannot substitute our judgment for that of the trier of fact." *Id.* Also, "the finder of fact is free to believe all, none, or part of the testimony presented at trial." *Id.*

In this case, the jury apparently gave great weight to:

- Officer Lawrence's extensive experience firing different kinds of weapons in both the military and as a police officer, (N.T., 11/13/17, pages 111-112, 126-127); and

- Officer Lawrence's testimony that the firearm is operable (N.T., 11/13/17, page 142); and

- The fact that the discovered firearm is a new model and has a firing pin (N.T., 11/13/17, page 139); and

- The fact that the when the firearm was discovered, it was ready to fire[,] as it was fully loaded, with a round in the chamber (N.T., 11/13/17, pages 123-124).

Given the foregoing, the jury's conclusion that the firearm is operable is not so contrary to the evidence as to shock one's sense of justice. Moreover, it was reasonable for the jury to infer from

that evidence that the firearm was operable. Hence, despite the fact that the Commonwealth was not required to do so, there was sufficient evidence to prove the firearm's operability.

Trial Court Opinion, 7/3/18, at 6-9. We agree with the trial court's analysis and determination, which is supported by the record and the law. Therefore, we affirm on this basis in rejecting Freeman's second issue. *See id.*

In his final issue, Freeman contends that the jury's verdicts were against the weight of the evidence, and the trial court abused its discretion in rejecting his weight claim. *See* Brief for Appellant at 45-46. In support of this claim, Freeman presents only the following two sentences of substantive argument:

> [T]he verdict should have shocked the trial court's sense of justice[,] when [] Wilson pled guilty and admitted to possession the firearm in the vehicle he was in control of. No evidence was presented by the Commonwealth beyond [Freeman's] mere presence in the vehicle at the time of the stop.

*Id.*

Pennsylvania Rule of Criminal Procedure 607(A) provides that "[a] claim that the verdict was against the weight of the evidence **shall** be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Pa.R.Crim.P. 607(A) (emphasis added). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa. Super. 2006) (citation omitted). Further, the fact that an appellant challenged the weight of the evidence in his court-ordered Rule 1925(b) concise statement, and the trial

court addressed the weight claim in its opinion, does not preserve the claim for appellate review in the absence of an earlier motion. **Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009).

Our review of the record discloses that Freeman failed to challenge the weight of the evidence before the trial court. Accordingly, his final issue is waived.[11]

Judgment of sentence affirmed.

_____

[11] Even if Freeman had not waived this claim, we would determine that he otherwise failed to properly develop it, for the same reasons that this Court in **Freeman I** rejected the weight claim raised before that panel:

> Upon review of [Freeman's] brief, it is apparent that his weight claims reiterate, in a condensed fashion, the same arguments that he presented in his sufficiency challenges. For example, [Freeman] argues that the verdict should have "shocked the court's sense of justice[] because [Wilson] accepted full responsibility for the firearm when he pled guilty to possessing it[.]" (Appellant's brief at 13.) At their essence, "[t]he argument[s] which [Freeman] makes in his brief [are] nothing more than a sufficiency challenge." [**Commonwealth v.**] **Lewis**, 911 A.2d [558,] 565 [(Pa. Super. 2006); **see also id.** (explaining that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed.")]. Because [Freeman] failed to properly present a weight claim for our review, we conclude that he has failed to establish that the trial court abused its discretion in ruling on his weight claim.

**Freeman I**, 647 MDA 2013 (unpublished memorandum at 10-11).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/16/2019</u>