J-S65014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EDWARD ROCHE | : | |
| | : | |
| Appellant | : | No. 1020 MDA 2019 |

Appeal from the PCRA Order Entered May 30, 2019
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0002430-2014

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY PANELLA, P.J.:            **FILED FEBRUARY 11, 2020**

James Edward Roche appeals from the May 29, 2019 order dismissing, after an evidentiary hearing, his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), **see** 42 Pa.C.S.A. §§ 9541-9546. Roche asserts that his trial counsel was ineffective for failing to object to the testimony of an expert witness because that witness opined in three discrete areas in which he was not qualified. Given the latitude afforded to the trial court in qualifying a witness as an expert, we find that the at-issue witness was amply qualified under Pennsylvania Rule of Evidence 702. Accordingly, there is no merit to Roche's tripartite ineffective assistance claim, and therefore, we affirm the PCRA court's decision.

_____

* Retired Senior Judge assigned to the Superior Court.

We have already meticulously summarized the facts surrounding Roche's case in his direct appeal. *See Commonwealth v. Roche*, 153 A.3d 1063, 1064-67 (Pa. Super. 2017). Briefly, after watching a violent movie and having consumed some amount of alcohol, Roche declared his intention to kill one of the victims. Roche's girlfriend, accompanying him in his criminal activity, suggested killing the son of the victim, too. Eventually, the victims' two bodies were found shot to death.

Roche was charged and convicted of two counts of first-degree murder, *see* 18 Pa.C.S.A. § 2502(a), and two counts of criminal conspiracy to commit criminal homicide, *see* 18 Pa.C.S.A. § 903. A jury convicted Roche of these four offenses, and thereafter, the court sentenced Roche to two consecutive terms of life imprisonment without the possibility of parole for the two murder convictions and two consecutive terms of 240 to 480 months of imprisonment for the conspiracy convictions.

After sentencing, Roche filed a direct appeal, which we denied. The Supreme Court of Pennsylvania denied review on July 3, 2017. On June 8, 2018, Roche filed the current PCRA petition. Correspondingly, counsel was appointed to represent Roche, and several months later, the PCRA court held an evidentiary hearing on Roche's petition.

Ultimately, the PCRA court denied Roche's petition, and in response, Roche filed a timely notice of appeal. The PCRA court did not require Roche to file a statement pursuant to Pa.R.A.P. 1925(b). Additionally, the court has specified that, instead of submitting a Pa.R.A.P. 1925(a)(1) opinion, the

reasons for its denial of PCRA relief can be found in the opinion appended to its denial order.

"Our standard of review for issues arising from the denial of PCRA relief is well-settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted). In making this determination, we read the record in the light most favorable to the prevailing party. **See Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012). If our review reveals support for the PCRA court's credibility and other factual findings, we may not disturb them. **See Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014). Conversely, we afford no deference to the PCRA court's legal conclusions. **See id.**

In this appeal, Roche asserts ineffective assistance of counsel. Specifically, Roche contends that trial counsel was ineffective for failing to object to an expert witness's testimony when that witness opined on: 1) the trajectory of fired bullets traveling through a human body; 2) blood spatter evidence; and 3) other ballistics-related pieces of information utilized at trial. **See** Appellant's Brief, at 4. Roche submits that if proper objections were made, his "claims of self-defense would have been much stronger." **Id**., at 15. Although Roche has fragmented his ineffective assistance of counsel claims into three distinct areas of his brief, given the large amount of factual and analytical overlap between his averments, we have consolidated his three issues into one omnibus ineffective assistance allegation.

Preliminarily, we presume counsel's effectiveness, and an appellant bears the burden of proving to the contrary. *See Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017). Moreover, we emphasize that demonstrating ineffective assistance of counsel is a high bar. "In order for [an a]ppellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Presley*, 193 A.3d at 442 (citation omitted).

Courts in Pennsylvania employ a three-prong test to establish ineffective assistance of counsel. Specifically, a PCRA petition must plead and prove that: 1) the petitioner's underlying legal claim has arguable merit; 2) counsel's actions lacked any reasonable basis; and 3) counsel's actions prejudiced the petitioner such that there is a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Spotz*, 18 A.3d 244, 260 (Pa. 2011). The inability to satisfy any one prong of the ineffectiveness test is sufficient to dismiss the entire claim. *See Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa. Super. 2004).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Barnett*, 121 A.3d 534, 540 (Pa. Super. 2015) (internal quotation marks and citations omitted).

The gravamen of Roche's ineffective assistance argument is that because one of the expert witnesses at trial, Trooper Shubzda, exceeded the scope of his expert status and pontificated on areas in which he was unqualified, trial counsel was therefore ineffective for not objecting to these deviations. Roche implicitly concedes that Trooper Shubzda was properly "admitted as an expert in the field of crime scene processing and investigation," Appellant's Brief, at 18, but finds fault with his testimony that delved into topics such as forensic pathology, internal bullet trajectories, ballistics, and blood spatter interpretations.

Expert witness qualification rests with the sound discretion of the trial court, and we will only reverse in clear cases evincing an abuse of that discretion. *See Nobles v. Staples, Inc.*, 150 A.3d 110, 113 (Pa. Super. 2016). "The standard for qualifying an expert witness is a liberal one; the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." *Commonwealth v. Kinard*, 95 A.3d 279, 288 (Pa. Super. 2014) (*en banc*) (citation omitted). "It is also well established that an expert may render an opinion based on training and experience; formal education on the subject matter is not necessarily required." *Commonwealth v. Copenhefer*, 719 A.2d 242, 255 (Pa. 1998); *see also* Pa.R.E. 702 (requiring an expert to simply possess generally accepted and specialized knowledge that could assist the trier of fact).

Roche's arguments rely upon the notion that a qualified crime scene investigation expert cannot, without further expertise and qualification, opine

- 5 -

on areas such as internal and external bullet trajectories as well as blood spatter evidence. Roche contends that those areas "undeniably require[] medical training," Appellant's Brief, at 19, or are reliant on "specialized scientific knowledge," *id*., at 25.

Specifically, Roche frames the issue of a bullet traveling inside of a human body as wholly distinct from the field of crime scene processing and investigation. Instead, Roche proclaims that an internal bullet trajectory analysis invokes the fields of both forensic pathology and ballistics.

Roche points to the testimony of Dr. Ross, an expert who also testified at trial, but who was specifically qualified to discuss forensic pathology, to establish that, as distinct from Trooper Shubzda's conclusions, Dr. Ross could not determine with any kind of scientific certainty the relative positions of the shooter and victim when the victim was shot. Conversely, Trooper Shubzda unequivocally stated that "the victim was either crouched and running away or crawling on the ground" when he was shot. N.T., 11/2/15, at 212 (implying the shooter discharged his firearm from a higher position than the retreating victim). Further, Trooper Shubzda asserted "bullets travel in a straight line." *Id*. Therefore, according to Roche, if Trooper Shubzda was found to be unqualified to offer his opinion on the victim's position, Roche's claim of self-defense would have been much more viable.

Next, Roche avers that Trooper Shubzda was equally unqualified to provide testimony on blood spatter evidence as he "was never offered for admission as an expert in blood spatter[,] and the [c]ourt never admitted him

as an expert in the field of blood spatter." Appellant's Brief, at 26. Accordingly, Trooper Shubzda exceeded his authority when he opined that one of the victims was initially shot when he was face down. *See* N.T., 11/2/15, at 204. When Trooper Shubzda made this pronouncement, he, too, drastically affected Roche's ability to establish a plausible self-defense claim.

Through our comprehensive review of Roche's brief and the record, we have uncovered no compelling basis to find that the trial court abused its discretion. It is uncontested that Trooper Shubzda was not explicitly qualified by the court in the fields illuminated by Roche. In effect, Roche appears to offer a semantical distinction between the topics of crime scene investigations and ballistics/blood spatter. Roche explicitly suggests that the court should have broken down these discrete areas and qualified the Trooper individually in the proposed fields because "crime scene investigations" is either entirely distinct from the other topics or conceptually too broad to impute relevant expert status to those other fields. *See* Appellant's Brief, at 21-22. However, Roche has not adequately challenged the PCRA court's determination that given the Trooper's extensive educational and field-based experiences with bullet trajectories and blood spatter evidence, those topics were necessarily subsumed under the unequivocally broader subject of crime scene investigation. *See* PCRA Court Opinion, filed 5/30/19, at 25-26.

The central case cited by Roche, ***Commonwealth v. Velez-Mercado***, 1515 MDA 2014 (Pa. Super. June 26, 2015) (unpublished memorandum), does not support the conclusion that trial counsel was ineffective for failing to

object to Trooper Shubzda's testimony. Instead, the unpublished **Velez-Mercado** case simply found that the officer there was able to render a lay opinion on a bullet hole because he had personally observed it. **See id**., at \*4. Moreover, the only other case cited by Roche in the body of his brief, **Commonwealth v. Puksar**, 740 A.2d 219 (Pa. 1999), held that there was no error in the trial court admitting a doctor as an expert to testify on the issue of blood spatters after an extensive *voir dire* process. **Puksar**, 740 A.2d at 226 (reaching this conclusion even though that doctor "was not an expert in the field" of bloodstain pattern interpretation).

At the PCRA hearing, Trooper Shubzda explained the field of crime scene processing:

> With crime scene processing, basically, all aspects of the crime scene come into play, blood spatter analysis, bullet trajectory, you could even include latent prints, you can even include disruption of the scene through a struggle, all those little pieces of the puzzle are put together by us and an opinion is rendered based upon what we see.

N.T., PCRA Hearing, 4/18/19, at 15. Further, Trooper Shubzda indicated that that in addition to offering an opinion based on his own observations, he utilized Dr. Ross's autopsy report to augment his opinion. **See id**., at 18.

In delving into his qualifications, Trooper Shubzda identified his twenty-seven years of service with the Pennsylvania State Police, with twenty-three of those years served in the Forensic Services Unit. **See id**., at 10-11. Trooper Shubzda processed hundreds of crime scenes involving homicides and had "several trainings in blood spatter analysis[, with one in particular being] held

by world-renown blood spatter analyst Paul Kish in cooperation with pathologist, Dr. Ross." *Id.*, at 11. Moreover, Trooper Shubzda had, in other trials, been qualified as a blood spatter expert and in the area of analyzing bullet trajectories. *See id*. All of these educational and field-based experiences were outlined in Trooper Shubzda's curriculum vitae, which was submitted at trial. *See id*.

Under these circumstances, Roche cannot establish that the trial court would have sustained his proposed objection. Trooper Shubzda testified he had specialized knowledge in ballistics in general, ballistics as they specifically relate to the human body, and blood spatter. Therefore, his suggestion that Trooper Shubzda was improperly qualified as an expert lacks arguable merit and his ineffective assistance claim inevitably fails.

Roche attempts to construct an artificially restrictive definition of what an expert qualified in crime scene investigations may discuss at trial. While a petitioner challenging the acceptance of an expert with no reported experience in blood spatter or ballistics might have yielded a different result, clearly, Trooper Shubzda had extensive training in the fields in which he opined, which satisfies the requirement that he must have either "scientific, technical, or other specialized knowledge … beyond that possessed by the average layperson[.]" Pa.R.E. 702(a).

Further, Roche cannot establish the he suffered prejudice from Trooper Shubzda's opinion testimony. Trooper Shubzda's opinions were corroborated

by Dr. Ross. Dr. Ross opined that the bullet paths through the Jeffrey Evans's body travelled from "back to front, left to right, and upward towards the head." N.T., Jury Trial, 11/2/15, at 568. Regarding Ronald Evans, Dr. Ross similarly opined that at least one bullet path "went from back to front, upwards towards the right." *Id*., at 560-61. Roche does not challenge any portion of Dr. Ross's testimony in this appeal.

While Roche correctly notes that Trooper Shubzda's opinion went further than Dr. Ross's, the Commonwealth would have been permitted to argue that Dr. Ross's testimony supported reasonable inferences that the victims were shot in the back and while bent over. As a result, Trooper Shubzda's testimony was merely cumulative to Dr. Ross's testimony, and Roche cannot establish that there is a reasonable probability that the outcome of the trial would have been different even if Trooper Shubzda's testimony had been excluded.

Accordingly, our review of the record supports the PCRA court's determination that Roche has failed to demonstrate ineffective assistance of counsel. Therefore, we affirm the PCRA court's order denying Roche's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/11/2020

- 10 -