J-S52006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANCE EVERETT | : | |
| | : | |
| Appellant | : | No. 999 EDA 2018 |

Appeal from the Judgment of Sentence February 21, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010257-2016

BEFORE: OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY OTT, J.: **FILED NOVEMBER 14, 2019**

Lance Everett appeals from the judgment of sentence imposed on February 21, 2018, in the Court of Common Pleas of Philadelphia County. The trial court sentenced Everett to a term of 4 to 10 years' imprisonment, after a jury convicted him of a violation of the Uniform Firearms Act (VUFA).[1] On appeal, Everett argues the verdict was against the weight of the evidence and the trial court erred in admitting hearsay statements made by the victim. For the reasons discussed below, we affirm.

The trial court summarized the facts underlying Everett's conviction as follows:

---

[1] 18 Pa.C.S.A. § 6105(a)(1).

The evidence at trial established that on September 1, 2016, at about 8:15 a.m., Detective (then Officer) Christian Chaves responded to a radio call for a person screaming and proceeded to the location of 4731 Princeton Avenue in Philadelphia. At that address, he observed Tracey Figueroa[2] who was screaming as she exited her house. He asked her what was going on and she excitedly attempted to explain what had happened. Detective Chaves observed injuries on her face and that she exhibited great difficulty composing herself. The Victim was able to tell him that a male had struck her on the side of her head with a gun and that she was having a hard time hearing from the side of her face that showed redness and injury. She screamed that she could not hear properly from one ear.

At trial the prosecutor asked Detective Chaves, ". . . what exactly did she tell you when you asked her what happened?" Defense counsel objected. [The trial court] overruled the objection stating that the witness's account was an excited utterance. According to Detective Chaves, [the Victim] stated:

> [ ]Lance hit me. It's my daughter's boyfriend and he just hit me with a gun. And he was threatening me with a gun. He kept pointing the gun at me and racking it saying he's going to kill me. And he kept hitting me in the head.[ ]

(N.T. [Trial,] 12/7/18, p. 26).

[The Victim] told Detective Chaves that Lance ran westbound on Princeton Street and made a right turn onto Marsden Street. She said that he had been wearing a black jacket, a white shirt and black pants; he had a gun in his waistband. Detective Chaves immediately placed her description over police radio for transmission.

Detective Chaves quickly learned that a suspect was being held by Officer Patrick Owens. Detective Chaves brought [the Victim] to Officer Owens, where she identified [Everett] as her assailant

---

[2] The trial transcripts lists the victim's last name as "Fugarino." N.T. Trial, 12/07/2017, at 27. She did not testify at trial and, it is not apparent from the record, which is the correct version of her name. Accordingly, we will refer to her as "the Victim."

- 2 -

[Everett] falsely identified himself as Shiheem Young. Later at trial it was stipulated that [his] legal name was Lance Richard Jamal Everett.

On cross-examination, Detective Chaves acknowledged that he had observed a white male run through alleyways and jump fences, but he did not attempt to stop him. Officer Patrick Owens testified that he began to drive around the area upon hearing the description of the assailant over the police radio. He had observed a black male, later identified by [the Victim] as [Everett], accompanied by a white male cross Wellington Street and walk eastbound at Torresdale Avenue. The black male was wearing a white shirt and black pants and was holding a black jacket in his left hand.

Officer Owens testified that as he drove his patrol car past the two men, the black male threw his jacket on the sidewalk, turned and continued to walk down Torresdale Avenue. Officer Owens drove up to the two men and told the black male to stop. The white male walked away. Officer Owens yelled at the white male to stop. However, as sirens were being sounded, the white male ran north on Torresdale Avenue. Officer Owens held the black male until a backup officer arrived and he turned the black male over to the backup officer. Officer Owens immediately retrieved the black jacket that [Everett] had discarded after observing [the] approach of law enforcement. From that black jacket Officer Owens retrieved a firearm inside the left jacket pocket. Officer Owens testified that the white male was subsequently apprehended by police officers at a nearby Dunkin Donuts store. That white male was transported to Officer Owens who identified him as the man who had run away from him.

On cross-examination, Officer Owens testified that the gun was registered in the name of Jason Rizzolo. The name Jay Torpey was also associated with the case. Police Officer Mark Wilusz of the Firearms Identification Unit testified that the gun recovered by Officer Owens was a Kel-Tec model P-11, semiautomatic pistol, .9 millimeter Luger. The gun had been duly test fired and found to be operable. It was stipulated that [Everett] had a prior qualifying conviction for possession with intent to deliver a controlled substance at CP 51-CR-0014348-2014, rendering him ineligible by statute to carry or possess a firearm. [Everett] did not testify and rested without offering any witnesses.

After deliberations, the jury found [Everett] guilty of violating the Uniform Firearms Act under 18 Pa.C.S.[A.] Section 6105[(a)(1)], which prohibits a person previously convicted of a drug offense from possessing a firearm. Sentencing was deferred pending the completion of a pre-sentence report and mental health evaluation. On February 21, 2018, [the trial court] sentenced [Everett] to an aggregate term of four (4) to ten (10) years of state supervised confinement and imposed rehabilitative conditions[.]

Post-sentence motions were filed and subsequently denied on March 8, 2018. A timely Notice of Appeal to the Superior Court was filed on March 30, 2018. On November 21, 2018, [the trial court] filed an Order requesting [Everett] to file a Statement of Errors Complained of on Appeal pursuant to [Pennsylvania Rule of Appellate Procedure 1925(b)]. On December 11, 2018, a statement was filed on behalf of [Everett]. [On February 5, 2019, the trial court filed an opinion.]

Trial Court Opinion, 5/02/2019, at unnumbered pages 2-4 (most record citations omitted).

In his first issue on appeal, Everett contends the verdict was against the weight of the evidence.[3] Everett's Brief, at 19-25. A weight of the evidence claim concedes the sufficiency of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Our review of a challenge to the weight of the evidence supporting the verdict is settled:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so

_____

[3] Everett preserved this claim by filing a post-sentence motion. *See* Pa. R.Crim.P. 607; Post-Sentence Motion, 3/08/2018, at 2-3.

clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

Here, Everett contends the verdict was against the weight of the evidence because "there is no physical or forensic evidence whatsoever linking Mr. Everett to the firearm recovered by police." Everett's Brief at 17. He insists that in the officer's initial radio call to other police officers, the arresting officer did not specify which individual threw the jacket. *See id.* He further emphasizes he complied with all police instructions while the man accompanying him fled. *See id.* Lastly, he notes the other man gave his name as "Jay" which is closer to the name on the gun registration, "Jason." *Id.*

In its opinion, the trial court denied Everett's weight of the evidence claim, citing the testimony of the police officers. *See* Trial Ct. Op., at unnumbered pages 6-7. Although the court properly cited the standard for a weight of the evidence argument, the court then turns to a sufficiency of evidence analysis before concluding the verdict was not against the weight of the evidence. *See id.* at unnumbered pages 5-7. Nevertheless, it is evident

from the court's discussion that it found no basis to overturn the jury's verdict and credibility determinations. We, in turn, find no abuse of discretion on the part of the trial court. *See Rosser*, *supra*.

The Victim described to the police the details of the events leading up to the police chase and subsequently identified Everett as the man who struck her with a gun. *See* N.T. Trial, 12/07/2017, at 26-29, 45-46. Police Officer Patrick Owens testified regarding his apprehension of Everett and specifically testified Everett was the individual who dropped the jacket in which he found the gun. *See id.* at 75-86. The jury found the officers' testimony credible, and, accordingly, convicted Everett of the above-referenced crime. We agree with the trial court's conclusion that the verdict does not "shock one's sense of justice." *Rosser*, *supra*, 135 A.3d at 1090.

In his second and final claim, Everett asserts, "the trial court abused its discretion when it admitted an 'excited utterance' by [the Victim]." Everett's Brief, at 18; *see also id.* at 26-31. Specifically, Everett claims the statement was unreliable because, in the statement made to Detective Chavez, the Victim claimed he hit her with a gun while in her 911 call she said Everett did not have a gun. *Id.* He also claims the statement was unduly prejudicial because it concerned an incident of domestic violence. *Id.* However, Everett waived this claim.

Our standard of review regarding the admissibility of evidence is well-established: "[I]n reviewing a challenge to the admissibility of evidence, we

will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. . . . To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lopez***, 57 A.3d 74, 81 (Pa. Super. 2012) (citation omitted), *appeal denied*, 62 A.3d 379 (Pa. 2013).

> The admissibility of hearsay is addressed in Rules 801, 802, and 803 of the Pennsylvania Rules of Evidence. Rule 801(c) defines hearsay as "a statement . . . offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay evidence is inadmissible under Rule 802. Out of court statements are not inadmissible hearsay, however, if they are offered for some relevant purpose other than to prove the truth of the matter asserted. ***Commonwealth v. Ali***, 608 Pa. 71, 126, 10 A.3d 282, 315 (2010); ***Commonwealth v. Puksar***, 559 Pa. 358, 368, 740 A.2d 219, 225 (1999)[, *cert. denied*, 531 U.S. 829 (2000)].

***Commonwealth v. Wantz***, 84 A.3d 324, 336 (Pa. Super. 2014).

Here, as discussed above, Everett claims the trial court improperly admitted the Victim's statements because they were unreliable and unduly prejudicial. ***See*** Everett's Brief, at 19. At trial, Everett objected only on the basis the statements were, "hearsay, unless [the Victim] is testifying." N.T. Trial, 12/07/2017, at 26. This Court has stated, "[w]here a specific objection is interposed, other possible grounds for the objection are waived." ***Commonwealth v. Shank***, 883 A.2d 658, 672 (Pa. Super. 2005) (citation omitted), *appeal denied*, 903 A.2d 538 (Pa. 2006). Because Everett did not object to the admission of the statements on the grounds of unreliability and

prejudice, he has waived this claim.[4] **See Shank**, **supra** at 672. Everett's

second contention does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/19

---

[4] In any event, the claim lacks merit. Our Rules of Evidence define an excited utterance as:

> [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused.

Pa.R.E. 803(2). Excited utterances fall under the common law concept of *res gestae*. **Commonwealth v. Pronkoskie**, 383 A.2d 858, 860 (Pa. 1978). *Res gestae* statements, such as excited utterances, present sense impressions, and expressions of present bodily conditions are normally excepted out of the hearsay rule, because the reliability of such statements are established by the statement being made contemporaneous with a provoking event. **Id.**

Here, we agree with the trial court that the Victim's statements that Everett assaulted her and threatened her with a gun made only a few moments after the incident, while visibly injured, and screaming, qualifies as an excited utterance. **See** Trial Ct. Op., at unnumbered pages 9-10.