J. S06044/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| OMAR TERRELL MASSENBURG, | : | No. 82 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, July 12, 2017,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0003449-2016

BEFORE:  LAZARUS, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED SEPTEMBER 22, 2020**

Omar Terrell Massenburg appeals from the July 12, 2017 judgment of sentence entered by the Court of Common Pleas of Montgomery County following his conviction of second-degree murder, firearms not to be carried without a license, and possession of a firearm with intent to employ it criminally.[1]  After careful review, we affirm.

> The relevant facts and procedural history underlying this appeal are as follows.  On the evening of Friday, March 18, 2011, appellant was a front-seat passenger in a gray, four-door 1997 Chevrolet Malibu with tinted windows being driven through the streets of Norristown by his friend, Ryan Stanford Lee when they observed seventeen-year-old [D.D.] walking home from his girlfriend's house along Noble Street near West Oak Street in Norristown Borough, Montgomery County.

---

[1] 18 Pa.C.S.A. §§ 2502(b), 6106(a)(1), and 907(b).

Although his girlfriend's mother had offered to give him a ride home, [D.D.] told her that he wanted to walk because it was a nice night. His girlfriend gave him a kiss on the cheek and hugged him before he left. [D.D.,] a promising high school student, was wearing a red sling backpack with an [iPod,] a handheld Nintendo game player and his cell phone inside, and [was] walking with earbuds in his ears unaware of the impending danger. [D.D.'s] girlfriend did not know of anyone that [D.D.] had problems with and he had never mentioned appellant's name to her.

Based on the evidence presented at trial, a jury later determined that appellant exited the Malibu with a .32 caliber revolver and approached the [D.D.] with the intent of robbing him. A witness walking his dog in that area described the encounter to police. He saw two men struggling, more or less wrestling and kind of on top of each other. He told police, and later the jury, that he heard the younger man ask "why are you doing this to me?"[] The witness heard a "pop" and observed the young man collapse in the street. Seconds later, he heard footsteps running away, heard a car door slam and observed a late '90s silver or gray four-door sedan pull away going eastbound on Oak Street toward Stanbridge Street accelerating "really fast." Another witness who heard the gunshot described a light gray vehicle parked on West Oak Street at Noble Street that "sped away" from the area.

At approximately 10:06 p.m. [D.D.,] stumbling, dialed 911 on his cell phone before collapsing in the street. At approximately 10:08 p.m., Norristown Borough Police Officers responded to the intersection of Noble Street and West Oak Street and found [D.D.] unconscious, face down in a large pool of blood, in the roadway still wearing the backpack. Doctors at Montgomery Hospital pronounced [D.D.] dead shortly after arrival. Dr. Paul Hoyer, a forensic pathologist, performed an autopsy on [D.D.] on March 19, 2011. Dr. Hoyer recovered a projectile from the body and opined that the victim died from massive blood loss resulting from a single gunshot wound to his left shoulder. Dr. Hoyer ruled the manner of death a

homicide. The evidence showed that the bullet that killed [D.D.] was a .32 caliber Smith & Wesson fired from a revolver that had entered downward into his left shoulder, pierced both lungs, and rested in the lower part of his chest, from where Dr. Hoyer was able to retrieve it. Officers were unable to recover any shell casings from the scene.

While responding to the scene on March 18th in an unmarked patrol car at approximately 10:08 p.m. with lights and siren activated and traveling on West Elm Street, Corporal Joseph Benson observed a late '90s model gray four-door sedan with tinted windows and a dirty front passenger wheel heading north on Stanbridge Street go through the stop sign at Stanbridge and West Elm in front of the Corporal. Corporal Benson described the driver as a black male, light to medium skin, looking straight ahead as he went through the stop sign.

Earlier that evening appellant, with [Mr.] Lee driving, and another friend, Steven Jackson in the back seat, had also fired shots from a handgun out of the gray four-door Malibu with tinted windows at one Khalil ("Batman") Byrd [("Mr. Byrd")].

On March 26, 2011, appellant and [Mr.] Lee gave statements to police in which appellant eventually admitted that they had been driving around Norristown in [Mr.] Lee's sister's 1997 gray, four-door Chevrolet Malibu with tinted windows on Friday night, March 18, 2011. Both appellant and [Mr.] Lee initially gave false statements and were subsequently charged with unsworn falsification to authorities in addition to recklessly endangering another person, a firearms violation and tampering with physical evidence. Appellant admittedly lied to the detectives in his first statement because "[he] didn't want to get wrapped up in this murder." Appellant identified [Mr.] Lee as the driver of the Malibu. According to appellant, he was wearing gloves when he shot at [Mr. Byrd].

During his subsequent statement to the detectives, appellant agreed to show them where he had

discarded the gun. Appellant described the gun as an "oldish looking", small caliber, black revolver. Approximately ten (10) law enforcement officers combed Martin Luther King Park on the east side of Norristown for three (3) to four (4) hours searching for the firearm to no avail. Law enforcement officers also conducted a search with appellant's consent of his residence on March 27, 2011. Although officers recovered a black holster, a box of Remington 12-guage shotgun shells, a .25-caliber single unfired bullet, and a black plastic box containing five .22-caliber unfired bullets, they recovered no firearms of any kind. Various witnesses later gave statements to law enforcement and testified at trial that appellant had assured them that others had successfully disposed of the gun. Law enforcement officers never recovered the weapon used to kill [D.D.]

Appellant and [Mr.] Lee both entered guilty pleas to charges related to providing false statements to law enforcement as well as to the shooting incident involving Khalil Byrd in 2011 and 2012, respectively.

The Montgomery County Detective Bureau and the Norristown Borough Police Department worked as a team to investigate the [D.D.] homicide, led by Detective Todd Richard of the Homicide Unit of the Montgomery County Detective Bureau and Detective Adam Schurr of the Norristown Borough Police Department. Following years of diligent police work, officers arrested appellant on March 16, 2016, and [Mr.] Lee on July 15, 2016, for the murder of [D.D.]

Francis Genovese, Esquire filed several pretrial motions on behalf of appellant. The Commonwealth also filed several pretrial motions. The [trial court] heard argument on those motions on March 29, 2017. Specifically, [appellant] sought to preclude the admission of statements, testimony or any other evidence in the Commonwealth's case in chief 1) regarding his alleged involvement in or affiliation with the "Oak and Smith" gang, 2) regarding his conviction for offenses charged in connection with the

- 4 -

shooting of [Mr. Byrd] as other crimes, wrongs or acts, 3) regarding his recorded statements to confidential informants concerning the shooting of [Mr.] Byrd and 4) regarding the written statement made by Defendant's co-conspirator, [Mr.] Lee, to detectives on March 26, 2011.

ADA Lauren Heron argued that the admission of the statements and consensual wire transcripts regarding the shooting at [Mr.] Byrd was necessary and relevant to show identity, opportunity and context for the Commonwealth's theory of the killing of Dawkins. Additionally, counsel for the Commonwealth asserted[] [Mr.] Lee's lies in his original statement support a conspiracy between the two, an agreement to lie about what they were doing that night.

Attorney Genovese successfully argued for the preclusion of reference to any alleged gang activity. This court determined that the evidence regarding the shooting at [Mr. Byrd] that night was relevant and, after conducting the required balancing test, admissible under, **inter alia***,* the "identity" and "opportunity" exceptions under Pa.R.E. 404(b)(2). The [trial] court issued its orders on the pretrial motions and scheduled appellant's trial to begin on Monday, April 10, 2017.

Trial court opinion, 4/23/19 at 2-8 (extraneous capitalization and citations to the record omitted).

Following [its] deliberations . . . , the jury convicted appellant of second-degree murder and other offenses as noted above on Friday, April 14, 2017. The [trial] court deferred sentencing and directed that a presentence investigation report and a PPI evaluation report be obtained. The [trial] court sentenced appellant to life imprisonment without parole on Count 2, second degree murder, and on Count 4, firearms not to be carried without a license and Count 5, possession of a firearm with intent to employ it criminally, a determination of guilt without further penalty.

Attorney Genovese timely filed appellant's post-sentence motion for relief on July 21, 2017. The [trial] court heard argument on the motion and the Commonwealth's response thereto on November 29, 2017.[Footnote 4] Appellant's counsel argued that the Commonwealth offered insufficient evidence to support the underlying felony of robbery to sustain the second degree murder verdict as no item of value had been taken from the victim, and there was no testimony or other evidence that the struggle one witness described as "wrestling" between [D.D.] and another man was anything more than a mutual fight. That witness did not testify, in fact, no witness testified about what precipitated that struggle at the corner of Noble and Oak Streets that night. [The trial] court denied appellant's post-sentence motion for relief by order entered on December 6, 2017. Appellant filed a timely notice of appeal on December 29, 2017. The [trial court] directed appellant to file a concise statement of the errors complained of on appeal ("statement"), pursuant to Pa.R.A.P. 1925(b) by order entered on January 5, 2018. Appellant filed his statement on January 26, 2018

> [Footnote 4] The argument on appellant's post-trial motions was originally scheduled on October 10, 2017. However, it was continued at the request of appellant's counsel because of an attachment to a capital case in Bucks County.

*Id.* 14-15 (extraneous capitalization and citations to the record omitted). The trial court subsequently filed an opinion pursuant to Pa.R.A.P. 1925(a) on April 23, 2019.

Appellant raises the following issues for our review:

(a.) Did the trial court err by denying appellant's pretrial motion ***in limine*** to preclude the

admission of evidence regarding appellant's conviction(s) for the offenses charged in connection with the unrelated shooting of Khalil Byrd, during the Commonwealth's case-in-chief?

(b.) Did the trial court err by denying appellant's pretrial motion ***in limine*** to preclude the admission of evidence regarding appellant's statements to a confidential informant regarding the shooting of Khalil Byrd, during the Commonwealth's case-in-chief?

(c.) Did the trial court err by granting the Commonwealth's pretrial motion ***in limine*** to allow the admission of portions of a written statement, made by appellant's non-cooperating, non-testifying co-defendant, Ryan Lee, during the Commonwealth's case-in-chief?

(d.) Did the trial court err by denying [appellant's] post-sentence motion for a judgment of acquittal on the charge of murder in the second degree, for which the jury returned a guilty verdict?

Appellant's brief at 4 (extraneous capitalization omitted; bolding and italics added).

In his first three issues, appellant raises allegations of trial court error in evidentiary rulings. Appellate review of evidentiary rulings are governed by the following standard of review:

Appellate courts review evidentiary decisions for an abuse of discretion. ***Commonwealth v. Walker***, [] 92 A.3d 766, 772 ([Pa.] 2014) (citations omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality,

> prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused." ***Id.*** at 772-773 (internal quotation marks and citations omitted).

***Commonwealth v. Jacoby***, 170 A.3d 1065, 1090 (Pa. 2017), ***cert. denied sub nom. Jacoby v. Pennsylvania***, 139 S.Ct. 58 (2018).

In his first and second issues, appellant contends that the trial court erred when it admitted evidence of appellant's prior bad acts. (Appellant's brief at 11, 15.)

> The particular Pennsylvania Rule of Evidence governing the admission of "prior bad acts" is Pa.R.E. 404(b) which provides, in relevant part:
>
> **(b)  Other crimes, wrongs, or acts.**
>
> . . . .
>
> (2)  Evidence of other crimes, wrongs, or acts may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.
>
> (3)  Evidence of other crimes, wrongs, or acts proffered under subsection (b)(2) of this rule may be admitted in a criminal case only upon a showing that the probative value of the evidence outweighs its potential for prejudice.
>
> Pa.R.E. 404(b)(1)-(3). Under this rule, the admission of prior "bad acts" is inadmissible for the sole purpose of proving the defendant has a bad character, or a

"criminal propensity." ***Commonwealth v. Powell***, [] 956 A.2d 406, 419 ([Pa.] 2008). Nevertheless, this rule permits the admissibility of such evidence for other relevant purposes, such as:

> showing the defendant's motive in committing the crime on trial, the absence of mistake or accident, a common scheme or design, . . . to establish identity[,] [or] where the acts were part of a chain or sequence of events that formed the history of the case and were part of its natural development.

***Id.*** However, admission for these purposes is allowable only whenever the probative value of the evidence exceeds its potential for prejudice. Pa.R.E. 404(b)(3).

***Commonwealth v. Briggs***, 12 A.3d 291, 336-337 (Pa. 2011), ***cert. denied sub nom Briggs v. Pennsylvania***, 565 U.S. 889 (2011). Our supreme court further noted that "[w]hen the trial court admits evidence of a defendant's other bad acts, 'the defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose.'" ***Commonwealth v. Crispell***, 193 A.3d 919, 937 (Pa. 2018), quoting ***Commonwealth v. Solano***, 129 A.3d 1156, 1178 (Pa. 2015). It is well settled that juries are presumed to follow the trial court's instructions. ***Commonwealth v. Aikens***, 168 A.3d 137, 143 (Pa. 2017), citing ***Commonwealth v. Bullock***, 913 A.2d 207, 218 (Pa. 2006), ***cert. denied sub nom. Bullock v. Pennsylvania***, 550 U.S. 941 (2007).

First, appellant argues that the trial court erred when it admitted evidence of appellant's guilty plea in connection with an unrelated shooting. (Appellant's brief at 11-15.) The Commonwealth avers that the prior bad acts

evidence admitted by the trial court establishes both appellant's identity and the opportunity appellant had to commit the crime in the case-at-bar. (Commonwealth's brief at 19-24.)

As noted by the trial court,

> To that end, evidence of appellant's shooting at [Mr.] Byrd earlier that same evening was relevant and highly probative. Appellant's admission that he had been riding around in the gray, 19[9]7 Chevrolet Malibu four-door sedan with [Mr.] Lee when he fired shots at [Mr. Byrd] with a revolver on the west end of Norristown on the evening of March 18, 2011, provided a foundation which would justify an inference by the jury that appellant was in fact the assailant who attempted to rob and subsequently shot [D.D.] The Commonwealth also argued that this evidence put into context statements regarding two separate incidents on the same night that appellant made in subsequent conversations with cooperating witnesses.

Trial court opinion, 4/23/19 at 26-27 (extraneous capitalization omitted).

In the instant case, the record reflects that the Commonwealth introduced the eyewitness testimony of Christopher McDonnell, who indicated that he saw a late 1990s model silver sedan speeding down Oak Street toward Stanbridge Street. (Notes of testimony, 4/11/17 at 89, 91-94, 107-108, 110.) Additionally, the Commonwealth presented testimony from Jenna Wenger Decembrino, who testified that she observed a light gray older model sedan parked on Oak Street. (Notes of testimony, 4/13/17 at 28, 30.) Ms. Decembrino testified further that approximately one minute after she heard a "loud bang," she observed the light gray sedan "speed away" down Oak Street. (*Id.* at 31.) Ms. Decembrino also testified that she saw the same

car turn down Noble Street from Oak Street. (*Id.*) Further, both Mr. McDonnell and Ms. Decembrino testified that they heard what they respectively described as a "pop" and a "loud bang." (Notes of testimony, 4/11/17 at 89-90; 4/13/17 at 28.)

Appellant further argues that the evidence at issue was of "minimal probative value," and was "clearly outweighed by its prejudicial impact upon the [j]ury." (Appellant's brief at 14.)

Here, the record reflects that the trial court provided the following cautionary instruction to the jury:

> Members of the jury, I want to read to you now what is called a limit[ing] instruction before Lieutenant McGowan testifies any further, because his testimony, as I'm told by counsel, will involve what this limiting instruction covers.
>
> You are about to hear evidence that [appellant] has previously pled guilty to criminal offenses that arose from his shooting at [Mr.] Byrd on March 18, 2011. Some of this evidence will be in the form of recorded conversations between [appellant] and cooperating witnesses. [Appellant] is not now being tried for those crimes. So he is not being tried for the [Mr.] Byrd shooting.
>
> I want to caution you -- and this is very important -- that the evidence is being admitted only for the limited purpose of establishing [appellant's] identity as the perpetrator of and/or his opportunity to commit the crimes for which he is now being tried, should you choose to accept it as such, and providing the context and completeness with respect to the recorded conversations.

> Again, I caution you that this evidence is being admitted only for those limited purposes and not for any other purpose whatsoever.

Notes of testimony, 4/11/17 at 214-215.

During its charge to the jury, the trial court again reminded the jury of the limits of the prior bad acts evidence:

> The fourth cautionary or limiting instruction had to do with the admission of evidence regarding [appellant's] criminal conduct and conviction related to the shootings at [Mr.] Byrd on March 18, 2011. You heard evidence that [appellant] previously pled guilty to criminal offenses that arose from the shooting at [Mr.] Byrd on March 18, 2011. Some of this evidence was in the form of recorded conversations between [appellant] and cooperating witnesses. [Appellant] is not on trial for those crimes now, and his guilty plea has previously occurred. So I want to caution you that this evidence is being admitted only for the limited purpose of establishing [appellant's] identity as the perpetrator of and/or his opportunity to commit the crimes for which he is now being tried, should you choose to accept it; and second, to provide context and completeness with respect to the recorded conversations. So again, I caution you that this evidence is being admitted only for those limited purposes and not for any other purpose.

Notes of testimony, 4/14/17 at 157-158.

Based on our review of the record, we find that the trial court did not abuse its discretion when it permitted the Commonwealth to introduce evidence of appellant's guilty plea relating to the case involving Mr. Byrd. Indeed, as noted in detail **supra**, the Commonwealth demonstrated that the prior bad acts evidence established appellant's identity and opportunity pursuant to Rule 404(b). Because the trial court instructed the jury twice that

the evidence of appellant's guilty plea in the unrelated crime could not be used in determining appellant's guilt with regard to the crime in the case-at-bar, we hold that the probative value of the evidence presented by the Commonwealth exceeded its potential for prejudice. Pa.R.E. 404(b)(3); *Briggs*, 12 A.3d at 336-337; *Aikens*, 168 A.3d at 143. Accordingly, appellant's first issue is without merit.

Second, appellant avers that the trial court erred when it denied appellant's motion *in limine* to preclude admission of appellant's recorded statements to a confidential informant later identified as Jason Brown, while both men were incarcerated at the Montgomery County Correctional Facility. (Appellant's brief at 15.) Specifically, appellant alleges that the trial court erred when it admitted an audio recording and a written transcript of a conversation between appellant and Mr. Brown. (*Id.* at 16.)

Appellant argues that evidence is of minimal probative value because of the excessive background noise present in the audio recording and because "[Mr.] Brown continuously jumps back and forth between the subjects of the shooting of [Mr.] Byrd and the shooting of [D.D.] within the conversation. Thus, it is virtually impossible to tell which shooting [Mr. Brown] is referring to at any given point in time during the conversation. (*Id.* at 17-18.)

As we concluded *supra*, the trial court did not err when it admitted evidence of appellant's guilty plea in connection with the shooting at Mr. Byrd, pursuant to Pa.R.E. 404(b). We further find appellant's argument, that it is

"virtually impossible to tell which shooting [Mr. Brown] is referring to at any given point in time during the conversation[,]" to be unpersuasive. (**_See id._** at 17-18.)

During trial, Mr. Brown provided testimony regarding his recorded conversation with appellant while the Commonwealth played a recording of the conversation for the jury. (Notes of testimony, 4/12/17 at 174-178.) The Commonwealth also introduced a transcript of the recorded conversation into evidence. (**_Id._** at 168.) The transcript of the recorded conversation reads, in relevant part:

> [Mr. Brown]: I know you couldn't sleep after that n[****], you had to be tossing and turning and s[***]
>
> [Appellant]: That s[***] really weighed on me, [t]hat s[***] really weighed on me real s[***]. [Mr. Byrd] kept sayin' my name
>
> [Mr. Brown]: You got booked for that [Mr. Byrd] jawn[2]
>
> [Appellant]: Yeah
>
> [Mr. Brown]: Yo, that s[***] happen [sic] that same night
>
> [Appellant]: Yeah around the same time. That s[***] was goofy. Takin['] the burner and the work and got a 1 to 2
>
> [Mr. Brown]: You mean the jawn you caught the body with

---

[2] The Oxford Dictionary defines "jawn" as dialect chiefly used in eastern Pennsylvania to "refer to a thing, place, person, or event that one need not or cannot give a specific name to." _Jawn Definition_, lexico.com, https://www.lexico.com/en/definition/jawn (last visited July 24, 2020).

[Appellant]: Naw not for the body. I did one to two for the [Mr. Byrd] s[***]. I ended up doing two years and s[***].

Commonwealth's Exhibit C-73 at 5-6.

Prior to hearing evidence of the recorded conversation, the trial court provided the following cautionary instruction to the jury:

You're about to hear evidence of a recorded conversation between [appellant] and the cooperating witness. Within said conversation, you may hear evidence that the conversation occurred while [appellant] was incarcerated at the Montgomery County Correctional Facility. I want to caution you that this evidence is being admitted only for the limited purpose of providing what we call context and completeness with respect to the recorded conversation and not for any other purpose. You may not consider the fact that [appellant] was incarcerated at the time [that] the conversation was recorded as any evidence of guilt of the crime for which [appellant] is now on trial.

Notes of testimony, 4/12/17 at 171. The record reflects that the trial court repeated this instruction to the jury during its final charge. (**See** notes of testimony, 4/14/17 at 156-157.)

Based on our review of the record, we find the evidence at issue to be highly probative. Indeed, appellant directly addressed his role in the D.D. shooting and its chronological relationship to his involvement in the shooting of Mr. Byrd. Moreover, the trial court provided the jury with instructions limiting the use of any references to appellant's incarceration within the recorded conversation. Accordingly, we hold that the probative

value of Mr. Brown's recorded conversation with appellant exceeds its potential for prejudice and that the trial court did not abuse its discretion when it admitted the recording and the accompanying transcript. Pa.R.E. 404(b)(3); *Briggs*, 12 A.3d at 336-337; *Aikens*, 168 A.3d at 143. Appellant's second issue, therefore, is without merit.

In his third issue, appellant contends that the trial court erred when it granted the Commonwealth's motion *in limine*, permitting part of a written statement made by appellant's non-cooperating, non-testifying co-defendant, Mr. Lee, to be admitted into evidence. (Appellant's brief at 19-24.) Specifically, appellant alleges that the evidence at issue was inadmissible hearsay and that it violated appellant's rights under the Confrontation Clause.[3] (*Id.* at 20.)

The Commonwealth avers that the statement at issue was not offered for the truth of the matter asserted, thereby rendering the rule against hearsay irrelevant in this context. (Commonwealth's brief at 30.) Specifically, the Commonwealth argues that the statement from Mr. Lee attempted to provide an alibi for both himself and appellant. (*Id.*)

---

[3] Appellant's brief does not include any discussion of the Confrontation Clause, or how it applies in the instant case. Accordingly, appellant waives any Confrontation Clause claim. *See Commonwealth v. Charleston*, 94 A.3d 1012, 1022 (Pa.Super. 2014), *appeal denied*, 104 A.3d 523 (Pa. 2014), quoting *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa.Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2009) ("We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived." (brackets in original)).

The Pennsylvania Rules of Evidence prohibit the admission of hearsay evidence, except as provided by the Rules. Pa.R.E. 802. Our cases define hearsay as "an out-of-court statement offered to prove the truth of the matter asserted in the statement." *Commonwealth v. Kuder*, 62 A.3d 1038, 1055 (Pa.Super. 2013), *appeal denied*, 114 A.3d 416 (Pa. 2015), citing *Commonwealth v. Puksar*, 740 A.2d 219, 225 (Pa. 1999), *cert. denied sub nom. Puksar v. Pennsylvania*, 531 U.S. 829 (2000).

Here, the record reflects that the evidence at issue was not introduced to prove the truth of the matter asserted within the statement; therefore, the rule against hearsay and its exceptions do not apply in this instant case. Indeed, the trial court instructed the jury as follows:

> Members of the jury, you may remember yesterday that I provided you with a cautionary instruction and told you that certain evidence was being admitted for a limited purpose. Before we hear any more testimony from this witness, I also want to give you an instruction as follows:
>
> You are about to hear evidence that [Mr.] Lee gave a written statement to Detectives Bandy and Schurr on March 26, 2011. I want to caution you that this evidence is not being admitted to prove the truth of the contents of that statement; rather, it is being admitted only for a limited purpose of establishing by circumstantial evidence the existence of the alleged conspiracy between [Mr.] Lee and [appellant], should you choose to accept it as such.
>
> Again, I caution you that this evidence is being admitted only for that limited purpose and not for any other purpose.

Notes of testimony, 4/12/17 at 45.

Accordingly, appellant's third issue is without merit.

In his fourth issue, appellant appears to raise a sufficiency of the evidence claim. Specifically, appellant contends that the trial court erred when it denied appellant's post-sentence motion for a judgment of acquittal for the second-degree murder charge because the Commonwealth failed to establish beyond a reasonable doubt that a robbery took place. (Appellant's brief at 27.)

The Pennsylvania Rules of Appellate Procedure require an appellant to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge" within the concise statement of errors complained of on appeal. Pa.R.A.P. 1925(b)(4)(ii). Pennsylvania courts have consistently held that for sufficiency of the evidence challenges, an appellant's Rule 1925(b) statement "needs to specify the element or elements upon which the evidence was insufficient." ***Commonwealth v. Tyack***, 128 A.3d 254, 260 (Pa.Super. 2015), quoting ***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa.Super. 2008) (citation omitted). Failure to do so results in waiver of the issue on appeal. ***Id.***

Here, similar to the defendant in ***Tyack***, appellant provides a boilerplate Rule 1925(b) statement, averring as follows: "Did the Trial Court err by Denying [Appellant's] Post-sentence Motion for a Judgment of Acquittal on the charge of Murder in the Second Degree, for which the Jury returned a guilty

verdict?" (Appellant's Rule 1925(b) statement, 1/26/18 at ¶ IV; *see also Tyack*, 128 A.3d at 260.) Appellant failed to specify any element upon which the Commonwealth's evidence was insufficient. Accordingly, appellant's fourth issue is waived on appeal.

Judgment of sentence affirmed.

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 9/22/2020