J-S05025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                    :                 PENNSYLVANIA
                                      :

          v.                    :
                                      :

DASHAAN R. SMITH              :
                                      :

           Appellant        :     No. 2774 EDA 2023

Appeal from the PCRA Order Entered September 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003773-2014

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                      :                 PENNSYLVANIA
                                      :

          v.                    :
                                      :

DASHAAN R. SMITH              :
                                      :

           Appellant        :     No. 2775 EDA 2023

Appeal from the PCRA Order Entered September 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008433-2014

BEFORE:    BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:               **FILED MARCH 26, 2025**

      Dashaan R. Smith (Appellant), *pro se*, appeals from the order dismissing

his first petition filed pursuant to the Post Conviction Relief Act (PCRA). **See**

42 Pa.C.S.A. §§ 9541-9546. Appellant claims his trial counsel was ineffective

for failing to 1) object, during Appellant's jury trial, to the admission of certain

_____

[*] Former Justice specially assigned to the Superior Court.

testimony because it violated Appellant's Confrontation Clause[1] rights; and 2) challenge, at sentencing, the trial court's application of an incorrect offense gravity score (OGS) to some of Appellant's convictions. After careful review, we affirm.

This Court previously summarized the factual history underlying Appellant's convictions, related to his participation in two armed robberies:

> On March 3, 2014, at about 10[:00] p.m., victim D.E. exited a [] trolley on 47th Street, at its intersection with Woodland Avenue in the City and County of Philadelphia. After D.E. departed the trolley, he proceeded northbound on the west side of 47th Street, [walking] towards his home on Chester Avenue. D.E. carried with him a bag of groceries from Trader Joe's, his brief case, and his cell phone. As D.E. approached Reinhard Street and its intersection with 47th Street—approximately one block south from Kingsessing Avenue—D.E. peered up from his cell phone, upon which he was playing a game, and observed three males wearing hoods near the intersection of Kingsessing Avenue, approximately one-half block to the north in front of him. Two of the men were on the west side of the intersection, while the other suspect was located on the east side of the street. As D.E. reached the corner of Kingsessing Avenue, the three individuals, in concert, ran towards D.E. Before approaching D.E., at a distance of around fifteen feet, the three individuals placed masks over their faces. One of the individuals brandished a silver firearm and pointed the firearm in D.E.'s direction. The three individuals took, without permission, D.E.'s cell phone, wallet, keys, briefcase and groceries.
>
> After the items were taken, the three individuals ran westbound on Kingsessing Avenue. D.E. then immediately ran

_____

[1] The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…." ***Commonwealth v. Yohe***, 79 A.3d 520, 530-31 (Pa. 2013) (footnote omitted) (quoting U.S. CONST. amend. VI).

back to his home and was forced to use his wife's cell phone to call the police. When the police arrived, they drove D.E. around the neighborhood to see if he could identify any persons that matched the description of the suspects. D.E. described the suspects to police as three young, African American males with a height of at least six-feet and two inches, with the exception of one individual[, who] … was two or three inches taller. D.E. further described the suspects as having a light build, and that each suspect was under 200 pounds.

On March 9, 2014, at around 10[:00] p.m., victims D.J. and his wife, R.L., were waiting for the bus at the corner of 45th Street and Spruce Street in … Philadelphia. At that time, both victims were using their cell phones and [they] observed two individuals approach them from behind. One of the individuals that approached the victims displayed and pointed a silver firearm at D.J.'s chest and [demanded that the victims surrender] their possessions. D.J. gave the two individuals around $30.00 in currency and a cell phone; … R.L.[] gave them her purse, which contained around $40.00 in currency and a cell phone.

On March 11, 2014, Officer Russel Valenza [(Officer Valenza)] of the Philadelphia Police Department was [conducting an undercover] patrol from … Baltimore Avenue to Woodland Avenue, in between 45th Street and 49th Street. Officer Valenza was instructed by his superiors to work in plain clothes because of the numerous robberies that had been reported in the area. While Officer Valenza walked northbound on 47th Street, approaching its intersection with Springfield Avenue, Officer[] … Valenza observed a male that fit the description for a robbery [suspect] from the previous night. While travelling west from 48th Street, the described suspect approached Officer Valenza and placed a silver handgun to the right side of Officer Valenza's head and demanded he "give it up." At that time, Officer Valenza was able to strike and remove the firearm from the suspect's hand, and subdued the suspect until he was placed into custody. The male that attempted to rob Officer Valenza was later identified as David Tingle [(Mr. Tingle)].

On March 11, 2014, [**Mr.**] **Tingle was arrested and provided statements to officers** admitting his involvement in multiple robberies, including the robbery of Officer Valenza, and the robbery of … victim R.L., at 4500 Spruce Street. At that time, Mr. Tingle was in possession of R.L.'s white cell phone, which he

told police "was taken from [R.L.] and given to him by his cousins." **Mr. Tingle [] implicated his cousins, Quinzel Smith [(Quinzel)] and Appellant**[2] [**in the robberies**,] and told officers [that Mr. Tingle]—and his cousins—lived at 4932 Kingsessing Avenue, [Philadelphia,] which prompted Philadelphia Police to execute a search warrant at that address. On March 15, 2014, when officers searched the residence at 4932 Kingsessing Avenue, the officers located a motorcycle mask, multiple cell phones, D.E.'s briefcase, an OtterBox cell phone case, a wallet with no cash or credit cards (the driver's license was still present in the wallet), and other items, including the same grocery bag D.E. carried the night he was robbed.

On March 15, 2014, Officer Craig Fife … of the Philadelphia Police went to D.E.'s home to conduct photo arrays. At that time, [] D.E. was able to immediately identify Appellant and Quinzel [] as the suspects from the night he was robbed, [and described] each individual's role in the robbery. On March 20, 2014, victim D.J. spoke with detectives and reviewed photographic arrays. [] D.J. was subsequently ordered to attend a lineup by a judge. On May 7, 2014, the lineup was held with both victims—D.J. and R.L.—from the March 9, 2014, robbery present. During the lineup, [] R.L. positively identified Appellant and [] D.J. positively identified Quinzel [].

*Commonwealth v. Smith*, 240 A.3d 213, 1623 EDA 2019 (Pa. Super. 2020) (unpublished memorandum at 1-5) (footnote and emphasis added; citation and brackets omitted; punctuation modified).

Police arrested Appellant on March 15, 2014, and charged him at two separate dockets as follows:

- 3773-2014 (case 3773) – related to the March 3, 2014, robbery of D.E. – charging Appellant with, *inter alia*, one count each of

---

[2] Mr. Tingle did not testify at Appellant's trial. Quinzel is Appellant's brother and co-defendant.

robbery, conspiracy to commit robbery, and possession of an instrument of crime (PIC).[3]

- 8433-2014 (case 8433) – related to the March 9, 2014, robbery of D.J. and R.L. – charging Appellant with, *inter alia*, two counts of robbery and one count each of conspiracy and PIC.

The trial court granted the Commonwealth's pre-trial request to consolidate case 3773 with case 8433 for purposes of trial.

The matter proceeded to a jury trial in February 2016, wherein the Commonwealth jointly tried Appellant and Quinzel. Appellant was represented by William C. Montoya, Esquire (trial counsel). This Court summarized the trial testimony relevant to the instant appeal:

> Detective Theodore Manko [(Detective Manko)] … testified on behalf of the Commonwealth. (N.T. Trial, 2/10/16, at 58-73). On direct examination, Detective Manko testified that he authored the search warrant affidavit, and executed the warrant, for the residence of Appellant[, Quinzel, and Mr. Tingle]. On cross-examination, [Quinzel's] counsel asked [Detective Manko] if Mr. Tingle was the "main source of information" for the search warrant affidavit, and **Appellant's [trial] counsel asked whether Mr. Tingle "became the focus of the investigation when he was arrested."** (*Id.* at 66, 70) [(emphasis added)]. The detective responded in the affirmative to both questions. On redirect, the Commonwealth requested that Detective Manko clarify Mr. Tingle's role in the investigation. Detective Manko explained that Mr. Tingle "gave a [police] statement about committing the robberies and [stated he] did it with his cousins."[4] (*Id.* at 72). **Appellant's [trial] counsel objected on the basis of hearsay.** After a sidebar with counsel, the [trial] court discontinued testimony and adjourned trial for the day. (*Id.* at 73). When trial resumed the next day, [trial] counsel reiterated his objection to

---

[3] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903(a), 907(a).

[4] We hereinafter refer to Mr. Tingle's police statement as "Mr. Tingle's statement" or "the Tingle Police Statement."

the introduction [of] Mr. Tingle's statement[] as hearsay.[5] (N.T. Trial, 2/11/16, at 3). The [trial] court overruled [trial counsel's] objection. (**Id.** at 4). Detective Manko then read into the record an excerpt from the search warrant affidavit that summarized information Mr. Tingle had provided to police. (**Id.** at 5).

**Smith**, 240 A.3d 213 (unpublished memorandum at 6-7) (emphasis and footnotes added; punctuation modified).

During trial counsel's closing argument to the jury, he argued Mr. Tingle falsely implicated Appellant in the robberies to serve Mr. Tingle's interest in his own criminal case. **See** N.T., 2/12/16, at 21-23, 25 (trial counsel pointing out Mr. Tingle robbed Officer Valenza prior to giving the Tingle Police Statement, and arguing "we know that the allegations [implicating Appellant] came from somebody that was in a lot of trouble. And he's trying to get out of it.").

The jury returned its verdict on February 12, 2016. At case 3773, the jury found Appellant guilty of one count of conspiracy to commit robbery, and acquitted him of robbery and PIC. At case 8433, the jury found Appellant guilty of two counts of robbery and one count of conspiracy to commit robbery, and acquitted him of PIC.

_____

[5] Significantly to the instant appeal, trial counsel lodged no objection based on the Confrontation Clause.

J-S05025-25

The matter proceeded to sentencing on April 26, 2016.[6] At the beginning of the sentencing hearing, the Commonwealth incorrectly advised the trial court that the OGS applicable to each of Appellant's conspiracy convictions was ten.[7] N.T., 4/26/16, at 14-15. Significantly, trial counsel did not object. Applying an OGS of ten to the conspiracy convictions, the trial court imposed an overall aggregate sentence, at both case 3773 and case

_____

[6] The judge who presided at Appellant's trial and sentencing, the Honorable Sean F. Kennedy (Judge Kennedy), also presided over Appellant's subsequent PCRA proceedings. At sentencing, Judge Kennedy had the benefit of a pre-sentence investigation (PSI) report. *See* N.T., 4/26/16, at 16.

[7] **It is undisputed that the OGS applicable to Appellant's conspiracy convictions was nine, not ten**. Appellant's Brief at 7-8; Commonwealth Brief at 14 ("[T]he correct [OGS] for conspiracy … would have been nine"). The PCRA court explained in its opinion that

> [a]ccording to the Seventh Edition of the Pennsylvania Sentencing Guidelines, in effect [at the time of Appellant's convictions], the sentencing range for a conviction with an [OGS] of ten, and [Appellant's] prior record score of zero, is 22-36 months' confinement, plus or minus 12 months. 204 Pa. Code § 303.16(a). The Sentencing Guidelines recommend a range of 12-24 months' confinement – plus or minus 12 months' – for [an OGS] of nine and prior record score of zero. *Id.* [] There is a downward carveout for inchoate offenses, wherein convictions for "conspiracy to commit a Felony 1 offense [shall] receive an Offense Gravity Score of one point less than the offense … which was the object of the conspiracy." 204 Pa. Code § 303.3(c)(1). The object of the conspiracy [in the instant case] was robbery by threat of serious bodily injury – a felony of the first degree. According to the Sentencing Guidelines, because the [OGS] for robbery – [serious bodily injury] is a ten, the [OGS applicable to Appellant's] conspiracy [convictions is] … nine.

PCRA Court Opinion, 2/27/24, at 14-15 (capitalization and punctuation modified).

- 7 -

8433, of 6 to 12 years in prison. The PCRA court explained Appellant's sentencing structure as follows:

> At [case 8433] …, the trial court sentenced Appellant to 36 to 72 months' confinement for [each of his three convictions, *i.e.*, two counts of robbery and one count of conspiracy]. [] The sentence was structured as follows: (i) the two robbery sentences ran concurrently; [and] (ii) the conspiracy sentence [ran] consecutive to the robbery sentences. N.T. Sentencing, 4/26/16, at 34. At [case 3773] …, the trial court sentenced Appellant to 36 to 72 months' confinement for his conspiracy conviction. This sentence ran concurrently with the [sentence imposed at case 8433].

PCRA Court Opinion, 2/27/24, at 14 (footnote omitted).[8] Appellant did not file post-sentence motions.

Following a procedural history that is not pertinent to this appeal, Appellant filed a direct appeal, *nunc pro tunc*. On appeal, he claimed, *inter alia*, the trial court erred in (1) applying an incorrect OGS at sentencing regarding Appellant's conspiracy convictions (the OGS issue); and (2) admitting into evidence Detective Manko's trial testimony regarding the Tingle Police Statement, which violated Appellant's rights under the Confrontation Clause (the Confrontation Clause issue). **Smith**, 240 A.3d 213 (unpublished memorandum at 8-9).

This Court affirmed Appellant's judgment of sentence and determined that he waived both the OGS issue and the Confrontation Clause issue, as he

---

[8] With respect to the sentences imposed on Appellant's conspiracy convictions of 36 to 72 months in prison, these sentences would fall within the aggravated range of the sentencing guidelines, if the trial court had applied the correct OGS of nine, instead of ten.

did not object to the purported errors in the trial court. *Id.* (unpublished memorandum at 10, 12) (finding waiver of (1) the OGS issue, as Appellant did not object to the application of an incorrect OGS at sentencing or in a post-sentence motion; and (2) the Confrontation Clause issue, where trial counsel raised only a hearsay objection "during Detective Manko's trial testimony … [regarding] the introduction of Mr. Tingle's statements," and made no mention of the Confrontation Clause[9]); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Appellant subsequently filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania denied on March 16, 2021. *Commonwealth v. Smith*, 250 A.3d 1162 (Pa. 2021).

On October 22, 2021, Appellant timely filed the instant *pro se* PCRA petition, his first. *See* 42 Pa.C.S.A. § 9545(b)(1) (providing all PCRA petitions must be filed within one year of the date the judgment of sentence becomes final); *see also* PCRA Court Opinion, 2/27/24, at 5 (finding Appellant's PCRA petition timely filed). The PCRA court appointed Judge Hall, Esquire (PCRA

---

[9] We recognize that "[h]earsay is a matter of Pennsylvania evidentiary law, while the Confrontation Clause is a matter of constitutional law and therefore is a separate issue. Raising a hearsay objection is not equivalent to raising a Confrontation Clause objection." *Commonwealth v. Keys*, 287 A.3d 888, 2535 EDA 2021 (Pa. Super. 2022) (unpublished memorandum at 26); *see also Commonwealth v. Carter*, 932 A.2d 1261, 1264 (Pa. 2007) (stating the "Confrontation Clause [is] not congruent with [the rule against] hearsay[.]" (citation omitted)).

- 9 -

counsel), to represent Appellant. Order, 11/3/21; *see also* Pa.R.Crim.P. 904(C).

PCRA counsel did not file an amended PCRA petition. Rather, on January 13, 2022, PCRA counsel filed a *Turner*/*Finley*[10] "no-merit" letter. PCRA counsel opined that there was no merit to Appellant's claims of trial counsel's ineffectiveness related to the OGS issue and Confrontation Clause issue. *See Finley* Letter Brief, 1/13/22, at 4-6. PCRA counsel requested that the PCRA court grant him permission to withdraw. *Id.* at 6. At that time, the PCRA court took no action on PCRA counsel's request to withdraw.

On March 8, 2022, the PCRA court issued Pa.R.Crim.P. 907 notice (907 Notice) of its intent to dismiss Appellant's PCRA petition without an evidentiary hearing. On April 20, 2022, Appellant filed a *pro se* response to the 907 Notice, wherein he, *inter alia*, requested permission to proceed *pro se*.

On November 18, 2022, the PCRA court held a hearing on Appellant's self-representation request, pursuant to *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) ("When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one."). That same date, the PCRA court granted Appellant permission to proceed *pro*

---

[10] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) (detailing the requirements for withdrawal from representation during collateral review); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (same).

*se*, finding his request was knowingly and voluntarily made.    Order, 11/18/22.[11]

On September 28, 2023, the PCRA court dismissed Appellant's PCRA petition.   Appellant thereafter timely filed *pro se* notices of appeal, at both case 3773 and case 8433.[12]  The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The PCRA court issued a thorough Rule 1925(a) opinion on February 27, 2024.

On appeal, Appellant presents two issues for our review:

1) Whether trial counsel was ineffective for failing to raise a proper objection, when the trial court erred by admitting the testimonial hearsay statements of a third party witness[,] who[m] the Appellant had no opportunity to cross-examine, in violation of the Appellant's 6th Amendment right to confront the witness against him?

2) Whether trial counsel was ineffective for failing to object to the trial court[']s decision to impose a sentence outside the sentencing guidelines for three counts of conspiracy[13] to commit robbery, after applying an erroneous offense gravity score and not stating any basis for sentencing Appellant outside the standard guidelines?

Appellant's Brief at 4 (unpaginated) (footnote added; issues reordered; punctuation modified).

_____

[11] On November 21, 2022, PCRA counsel filed a petition to withdraw as Appellant's counsel, which the PCRA court granted on December 1, 2022.

[12] This Court consolidated the appeals *sua sponte*.

[13] As explained *supra*, Appellant has only two convictions of conspiracy.

When reviewing the dismissal of a PCRA petition, we examine whether the determination of the PCRA court is supported by the record and free of legal error. ***Commonwealth v. Drummond***, 285 A.3d 625, 633 (Pa. 2022). We "consider the record in the light most favorable to the prevailing party at the PCRA level," and "grant great deference to the PCRA court's findings that are supported in the record." ***Commonwealth v. Diaz***, 183 A.3d 417, 421 (Pa. Super. 2018) (citations omitted).

In both of his issues, Appellant claims trial counsel rendered ineffective assistance. Regarding ineffectiveness claims, a

> PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). Pennsylvania law presumes counsel is effective; a PCRA petitioner bears the burden of proving otherwise. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018); ***see also Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and internal quotation marks omitted)).

In order to establish a claim of ineffectiveness, a PCRA petitioner must plead and prove three prongs:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)).

*Commonwealth v. Kapellusch*, 323 A.3d 837, 847 (Pa. Super. 2024) (quoting *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citations modified; ellipses omitted)).

Regarding the first prong of the ineffectiveness test, if the petitioner's underlying claim lacks arguable merit, his derivative claim of counsel's ineffectiveness necessarily fails. *Treiber*, 121 A.3d at 445 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."). Concerning the second prong, our Supreme Court has stated that

[g]enerally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Spotz*, 84 A.3d at 311 (citations, quotation marks, and brackets omitted). To establish the third, "prejudice prong," the PCRA petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012) (citations omitted). Finally, because a

- 13 -

PCRA petitioner must establish all three prongs of the ineffectiveness test to be entitled to relief, "if a claim fails under any required element, we may dismiss the claim on that basis." *Kapellusch*, 323 A.3d at 847 (citation omitted).

In his first issue, Appellant asserts the PCRA court improperly rejected his claim of trial counsel's ineffectiveness for failing to raise a Confrontation Clause objection to Detective Manko's testimony regarding the Tingle Police Statement. *See* Appellant's Brief at 8-10 (unpaginated); *see also id.* at 8 (unpaginated) (pointing out that trial counsel objected to the testimony based on "hearsay, but did not object [based on] the Confrontation Clause."). According to Appellant,

> trial counsel was ineffective by failing to use the proper objection [at trial] when the trial court violated [] Appellant's 6th Amendment right to confrontation, when it admitted into evidence the portion of the search warrant affidavit, which included out-of-court statements of [Mr.] Tingle, who did not testify at trial.

*Id.* at 10 (unpaginated) (punctuation modified); *see also id.* (asserting Mr. Tingle's statements "are testimonial because they were made to law enforcement officials during interrogation following the botched attempted robbery of Officer Valenza.").

The Commonwealth counters the PCRA court correctly rejected Appellant's claim of trial counsel's ineffectiveness regarding the Confrontation Clause issue. *See* Commonwealth Brief at 16-22. The Commonwealth contends that during trial counsel's cross-examination of Detective Manko,

"[t]rial counsel opened the door to the allegedly objectionable testimony,[14] rendering any objection unsuccessful and the underlying claim meritless." *Id.* at 16 (footnote added). According to the Commonwealth, "[t]rial counsel had a reasonable basis to open the door on cross-examination because the line of questioning furthered [the defense's] overall theory at trial." *Id.* at 16-17; *see also id.* at 19-20 ("[T]rial counsel had a reasonable basis to open the door to the testimony because it was congruent with [the defense] theory at trial. [Trial c]ounsel's questions regarding Mr. Tingle were designed to offer [Mr. Tingle] to the jury as an alternative suspect.").

The Commonwealth argues, in the alternative, that "even if the underlying [Confrontation Clause] objection had merit and trial counsel's strategy had no reasonable basis, [Appellant] was not prejudiced because any Confrontation Clause violation was a harmless error." *Id.* at 21. Specifically,

_____

[14] We have recognized that "[a] litigant opens the door to [otherwise] inadmissible evidence by presenting proof that creates a false impression refuted by otherwise prohibited evidence." *Commonwealth v. Nypaver*, 69 A.3d 708, 716-17 (Pa. Super. 2013) (citations omitted). In other words,

> [o]ne who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase "opening the door" by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

*Commonwealth v. Gilbert*, 269 A.3d 601, 613 (Pa. Super. 2022) (citations and ellipses omitted).

the Commonwealth maintains that "Mr. Tingle's statements to police were cumulative of other identifications [of Appellant as the robbery perpetrator,] and insignificant compared to the overwhelming evidence of [Appellant's] guilt." ***Id.***; ***see also id.*** at 22 (pointing out the "[v]ictims from both robberies identified [Appellant], and the items stolen from victim [D.E.] were recovered from [Appellant's] house during [execution of] a search warrant").

"Issues related to whether the admission of evidence violated an accused's rights under the Confrontation Clause are questions of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. McCullough***, 324 A.3d 582, 585 (Pa. Super. 2024) (citing ***Commonwealth v. Brown***, 185 A.3d 316, 324 (Pa. 2018) (plurality)). "The Sixth Amendment's Confrontation Clause generally prohibits the admission of hearsay statements that are 'testimonial' in nature." ***Id.*** (citing ***Crawford v. Washington***, 541 U.S. 36, 50-60 (Pa. 2004)); ***see also Commonwealth v. Banko***, 268 A.3d 484, 491 (Pa. Super. 2022) (explaining testimonial evidence has a "primary purpose of creating an out-of-court substitute for trial testimony." (citation and footnote omitted)).

Instantly, the PCRA court opined it properly rejected Appellant's claim of trial counsel's ineffectiveness for failing to preserve a Confrontation Clause claim:

> The admission of the Tingle Police Statement did not violate Appellant's rights under the Confrontation Clause. During trial, Detective [] Manko described the process to obtain a [search] warrant as follows:

- 16 -

After you receive information on an investigation or a crime, we get the facts together and we put together a search warrant by putting the facts of the crime, evidence, take it to a bail commissioner or a judge who reads it, and they sign it or don't sign it, depending on what's in it.

N.T. Trial, 2/10/16, at 59. Detective Manko testified that police developed Appellant's address for the search warrant through "background investigation and police officers and other witnesses" and [that police were] "looking specifically to where Quinzel [] or [Appellant] reside[d]." *Id.* at 63-64. **The Commonwealth did not venture close to the contents of Mr. Tingle's statement [on direct examination]**…. However, counsel for … [Quinzel] opened the door to the contents of [Mr.] Tingle's statement with the following exchange [during the cross-examination of Detective Manko]:

> Q [Quinzel's counsel]: The information you typed in [the search warrant affidavit], that was concerning … [Mr.] Tingle; is that right?
>
> A [Detective Manko]: Yes, I received information from other detectives and statements. [Mr.] Tingle was another person. Yes.
>
> Q: Would you say that [Mr.] Tingle provided the main source of information here?
>
> A: For the [search] warrant?
>
> Q: Yes.
>
> A: Yes.

N.T. Trial, 2/10/16, at 66.

However, **Appellant's [trial] counsel directly alluded to the substance of [Mr.] Tingle's statement** … [on cross-examination of Detective Manko:]

> [Q Trial counsel]: [Mr.] Tingle[] became the focus of the investigation when he was arrested. Correct?

- 17 -

[A Detective Manko]: Yes.

[Q]: Subsequent to [Mr. Tingle] being arrested, there were items that were recovered from him when he tried to rob the undercover police officer?

[A]: That information I got from other detectives. I was off when the actual robbery took place.

[Q]: But that information you used as part of your [search warrant affidavit] - correct?

[A]: Yes.

N.T. Jury Trial, 2/10/16, at 70[-71]. [] Trial counsel then had the following exchange [with Detective Manko]:

Q [Trial counsel]: Based on your recollection, and part of your [search warrant] affidavit, if you don't think you'll recall, I'll mark it.

A [Detective Manko]: I remember [that Mr. Tingle] had foreign currency, a $10 -

Q: E[uro].

A: Yes, a [€10] on him. I don't remember what else came from [Mr.] Tingle. It's in my affidavit.

* * *

Q: … And also[, Mr. Tingle] had a phone that fell from his pocket during the arrest?

A: Yes. That was one of the victim's phones, I believe.

Q: Mr. Tingle was subsequently arrested for other robberies that are not part of this case. Correct?

A: I believe so. Yes.

*Id.* at 71-72.

Following cross-examination, the Commonwealth asked Detective Manko [on re-direct,] since both "counsel have asked you about [Mr.] Tingle. They basically said that [Mr. Tingle] helped [the police] in your investigation. How did he help you?" ***Id.*** at 72. Detective Manko stated that [Mr. Tingle] "gave a statement to police about committing the robberies and [stating he] did it with his cousins." ***Id.***;[ ***see also id.*** at 73 (trial counsel raising a hearsay objection to this testimony).] **The line of questioning by [trial] counsel opened the door to [Mr.] Tingle['s ] statement.**

The Pennsylvania Supreme Court has explained that ["i]n general, a party may not object to improper testimony which he himself elicits." ***Commonwealth v. Puksar***, 740 A.2d 219, 227 (Pa. 1999) [(citation omitted)]; ***see also Commonwealth v. Yarris***, 549 A.2d 513, 525 (Pa. 1988). The trial court correctly overruled [trial counsel's hearsay] objection [to Detective Manko's testimony concerning Mr. Tingle's statement,] because an appellant may not object to, or have stricken, otherwise inadmissible evidence that defense counsel elicits on cross-examination. ***Puksar***, 740 A.2d at 227. Indeed, the trial court was clear [in ruling on trial counsel's hearsay objection, and explained that the court had] "reviewed the transcript. [Trial counsel] appeared to open up the door to allow the Commonwealth to read in[to the record] what [Mr. Tingle] had said." N.T. Trial, 2/11/16, at 3. **As [] trial counsel conceded, "I guess … the question did seem to open the door."** ***Id.*** [(emphasis added)].

\* \* \*

[] The record reflects that [trial] counsel opened the door to the Tingle Police Statement. Appellant is precluded from relief because he cannot satisfy the second or third [ineffectiveness test] prongs. [Trial] counsel did, in fact, render effective assistance of counsel because [he] objected to the admission of the Tingle Police Statement as hearsay. In other words, [] trial counsel "chose a particular course that had some reasonable basis designed to effectuate his client's interests." [***Commonwealth v.***] ***Durrett King***, 195 A.3d [255,] 259 [(Pa. Super. 2018) ("[W]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." (citation omitted)).] Hearsay, as

- 19 -

an out-of-court statement to prove the truth of the matter asserted, was a reasonable basis under which to object because the Tingle Police Statement did sound in hearsay because it was a statement made by a declarant not present in court. However, **Appellant has offered no substantive case law or set of facts wherein he demonstrates that pursuing a Confrontation Clause claim had a substantially greater potential for success than the hearsay objection at trial.** *Id.* Finally, Appellant has not demonstrated that, but for [trial] counsel's unprofessional errors, the result of the proceeding would have been different. *King*, 57 A.3d at 613. The trial court permitted the admission of the Tingle Police Statement upon the basis that [trial] counsel had opened the door to its admission. *See* N.T. Trial, 2/11/16, at 3. **Because [a] party may not object to improper testimony which he himself elicits, the basis under which [] trial counsel objected was moot**[,] because the [Tingle Police] Statement was entitled to be read into the record upon [trial counsel's] opening the door. *See Puksar*, 740 A.2d at 227. **No alternative objection would have supported [a] differing result.** Therefore, Appellant is not entitled to relief [on his claim that] trial counsel rendered ineffective assistance … in failing to preserve [a] Confrontation Clause claim.

PCRA Court Opinion, 2/27/24, at 9-13 (emphasis, footnote and some paragraph breaks added; capitalization modified).

Our review confirms the PCRA court's reasoning is supported by the record and the law. Consequently, Appellant failed to meet his burden of proving trial counsel's ineffectiveness.[15] *See id.*; *see also Gilbert*, 269 A.3d

---

[15] We are unpersuaded by Appellant's bald, and perplexing, claim that trial counsel "did not 'open the door' to [] testimony [regarding the Tingle Police Statement] because the testimony at issue did not mislead the jury in any way." Appellant's Brief at 8 (unpaginated). Rather, the record supports the Commonwealth's argument that

*(Footnote Continued Next Page)*

at 614 (holding the trial court properly exercised its discretion in admitting, over defense counsel's objection, evidence of the murder victim's prior reports of appellant's domestic abuse of her, where defense counsel "opened the door for the Commonwealth to probe further into the objectionable nature of the domestic disputes, eliciting testimony from [the victim's mother] that the victim had complained that [a]ppellant had physically struck her." (citation omitted)). Accordingly, Appellant's first issue, asserting trial counsel's ineffectiveness for failing to preserve a Confrontation Clause claim, merits no relief.

In his second issue, Appellant argues the PCRA court erred in denying relief on his claim of trial counsel's ineffectiveness for failing to object to the sentencing court's application of an incorrect OGS to his conspiracy convictions.[16] **See** Appellant's Brief at 6-8 (unpaginated). Appellant claims

_____

> the jury did not have to be misled to open the door[;] trial counsel opened the door when he ventured into … Mr. Tingle's role in the string of robberies. The jury was not misled because the full scope of Mr. Tingle's involvement was revealed to them.

Commonwealth Brief at 19 (citations to record omitted).

[16] A claim that a trial court assigned a defendant an incorrect OGS at sentencing implicates the discretionary aspects of sentencing. **See Commonwealth v. Sunealitis**, 153 A.3d 414, 421 (Pa. Super. 2016) (holding a challenge to an incorrectly calculated OGS raises a substantial question regarding the discretionary aspects of sentencing). Such a claim is not cognizable under the PCRA. **See** 42 Pa.C.S.A. § 9543(a)(2) (identifying cognizable issues under the PCRA and not identifying discretionary sentencing claims as cognizable). Appellant raises his discretionary sentencing challenge
*(Footnote Continued Next Page)*

- 21 -

that trial counsel's omission, and the sentencing court's application of an incorrect OGS, prejudiced him. *Id.* at 5, 7-8 (unpaginated). Appellant points out that the sentencing court's application of an OGS of 10 to the conspiracy convictions "resulted in the court imposing a sentence in [the] aggravated range" on those convictions. *Id.* at 5; *see also id.* ("The court did not provide any basis on the record for sentencing outside the standard range.").

The Commonwealth counters the PCRA court correctly rejected Appellant's claim of trial counsel's ineffectiveness regarding the OGS issue, as "[Appellant] failed to establish that the [application of a] mistaken [OGS] prejudiced him." Commonwealth Brief at 13. According to the Commonwealth, "there is no evidence to suggest that [Appellant] would have received a shorter sentence had trial counsel objected" to the OGS issue. *Id.* at 14.

> [T]here is no suggestion that [Appellant's] aggregate sentence would be different [if the trial court had applied the correct OGS to the conspiracy convictions]. [Appellant] was sentenced to an aggregate sentence of six to twelve years' incarceration for two robberies and two conspiracies to commit robbery. There was an extensive number of ways that the trial court could have schemed [Appellant's] sentence to lead to this aggregate sentence.

---

in the context of a claim of ineffective assistance of counsel, a cognizable issue under the PCRA. *See id.* § 9543(a)(2)(ii).

*Id.* at 16. The Commonwealth additionally emphasizes that the sentencing court (1) had the benefit of a PSI; and (2) noted Appellant's lack of remorse at sentencing. *Id.* at 14-15.

The PCRA court opined it properly denied relief on Appellant's ineffectiveness claim related to the OGS issue:

> [] Appellant has satisfied the first prong of the [ineffectiveness] test: that the underlying claim is of arguable merit. In other words, whether the disputed action or omission by [trial] counsel was of questionable legal soundness. *Commonwealth v. Davis*, 541 A.2d 315, 318 (Pa. 1988). Failing to object to an incorrect [OGS] would invoke whether the omission by trial counsel was of questionable legal soundness. While he satisfies the first prong, Appellant cannot satisfy the prejudice prong of the [ineffectiveness] test and his claim must nonetheless fail. *See Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009) (holding that a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness). Namely, [Appellant] cannot prove prejudice because there is no evidence within the record – and sufficient facts offered – that demonstrate that the outcome of the proceeding probably would have been different but for [trial] counsel's alleged omission.
>
> Appellant posits that had trial counsel properly objected to the trial court's use of an incorrect [OGS,] then [Appellant] may have [received] a lower custodial sentence. Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Commonwealth v. Sandusky*, 203 A.3d 1033, 1043-44 (Pa. Super. 2019). **Appellant has presented no credible evidence that the trial court**[17] **would have imposed a lesser minimum sentence had trial counsel objected** [**to**] **the OGS error.**

_____

[17] We reiterate that Judge Kennedy presided at sentencing and in the PCRA proceedings.

Further, **Appellant was not prejudiced because the sentence structure would have permitted the *same* aggregate sentence**. At [case] 8433[], Appellant received an aggregate [sentence] of 6 - 12 years' confinement. He was sentenced to 3 - 6 years' imprisonment for each of his three convictions: (i) robbery; (ii) conspiracy; and (iii) robbery. The sentence for conspiracy was consecutive to the two concurrently-running robbery sentences.[FN] For instance, the trial court could have r[u]n the two robbery sentences from [case] 8433[] consecutive to each other, and had a lesser conspiracy sentence run concurrently. Alternatively, the trial court could have ordered all three sentences from [case] 8433[] to be served consecutively; or it could have run the conspiracy sentence from [case] 3773[] consecutive to the [case] 8433[] sentences. It should be noted that the trial court had the benefit of a PSI. ***See Commonwealth v. Tirado***, 870 A.2d 362, 368 (Pa. Super. 2005) (stating where [the] sentencing court had [the] benefit of [a] PSI, [Pennsylvania] law presumes [that the] court was aware of and weighed relevant information regarding defendant's character and mitigating factors).

[FN] Appellant's 3-6 years[ of imprisonment] sentence for conspiracy at [case] 3773[] ran concurrently with the sentences [imposed at case] 8433[].

**Nothing in the record indicates the trial court would have accepted the sentencing guideline range for the conspiracy conviction**[**s**]**.** At sentencing, the trial court stated the following:

And what resonated with me was [] the fact [that Appellant] didn't care what happened to you, Quinzel, and you guys are brothers ...[.] So [Appellant] wasn't really caring what was going on with [Quinzel]. [Appellant] was more concerned with his own well-being. That's not brothers to me.

* * *

Neither [Appellant nor Quinzel] really showed any remorse when [the victims] testified. I recall looking at both [Appellant and Quinzel]. You were both very relaxed like you are now. You didn't take any responsibility for this case.

- 24 -

N.T. Sentencing, 4/26/16, at 32-33.  Our appellate courts have long held that a "lack of remorse is an appropriate sentencing consideration[,]" and the reviewing court must "give great weight to the sentencing court's discretion, as [the court] is in the best position to measure factors such as nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference."  **Commonwealth v. Summers**, 245 A.3d 686, 695 (Pa. Super. 2021) (cleaned up).

Here, **there are too many speculative factors regarding the discretionary aspect**[**s**] **of sentencing to conclude that Appellant would probably have received a lower sentence if an objection to the incorrect** [**OGS**] **was raised at sentencing**.  The trial court could have implemented a sentencing structure with a longer aggregate sentence.  The trial court could have aggravated the standard[-]range conspiracy sentences (which would equal the standard guideline range [applicable to an] OGS [of] 10) due to Appellant's lack of remorse.  Because Appellant cannot satisfy all elements of the [ineffectiveness] test, his claim [of trial counsel's ineffectiveness] must fail.

PCRA Court Opinion, 2/27/24, at 15-17 (one footnote in original; remaining footnote and emphasis added; capitalization modified).

The PCRA court's reasoning is supported by the record and the law, and we agree with its determination.  **See id.**; **see also Commonwealth v. Truver**, 311 A.3d 561, 716 WDA 2023 (Pa. Super. 2023) (unpublished memorandum)[18] (upholding PCRA court's rejection of appellant's claim of plea counsel's ineffectiveness for failing to object to the sentencing court's application of an incorrect OGS, where appellant failed to prove prejudice, and

_____

[18] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019, may be cited for their persuasive value.

stating, "[a]ppellant presented no credible evidence that the sentencing court] would have imposed a lesser minimum sentence had plea counsel objected to the OGS error[.]" (citation, brackets, and quotation marks omitted)). *Cf. Commonwealth v. Taylor*, 524 A.2d 942, 950 (Pa. Super. 1987) (holding trial counsel was ineffective for failing to object to the sentencing court's application of an incorrect prior record score, which "error caused provable prejudice to appellant," as it led to a longer sentence) (footnote omitted). Appellant's claim of trial counsel's ineffectiveness regarding the OGS issue does not merit relief.

Based on the foregoing, as we discern no abuse of discretion or error of law in the PCRA court's rejection of Appellant's claims of trial counsel's ineffectiveness, we affirm the dismissal of Appellant's first PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2025